**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CREOSOTE COUNCIL, et al.,**      ) | |
| ) | |
| **Plaintiffs,**      ) | |
| ) | |
| **v.**      ) | |
| ) | **Civil Action No. 1:08-cv-00512 (JR)** |
| **STEPHEN L. JOHNSON,**      ) | |
| **Administrator,**      ) | |
| **U.S. Environmental Protection Agency,**      ) | |
| **et al.,**      ) | |
| ) | |
| **Defendants.**      ) | |

**SUPPLEMENTAL REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs Creosote Council, Koppers Inc., Southern Pressure Treaters' Association, Treated Wood Council, and Western Wood Preservers Institute (collectively, "Plaintiffs") hereby supplement their Reply to the Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction filed by the United States Environmental Protection Agency ("EPA"), and its administrator, Stephen L. Johnson (collectively "Defendants").

EPA in its Opposition asserts that "EPA had not previously taken a definitive position regarding releases from "finished goods in storage" generally, and still less had EPA made any definitive statement concerning reporting releases from treated wood in storage." Opp. Mem. at 3. EPA failed to note that in its Draft "Emergency Planning and Community Right-to-Know Act Section 313 Reporting Guidance for Wood Preserving Operations" ("Draft Guidance") issued in November 1999, and distributed to the industry for comment, EPA never mentioned an obligation to report emissions from treated wood in storage. *See* Draft EPCRA Section 313 Reporting Guidance for Wood Preserving Operations EPA 745-R-99-012 (November 1999) attached hereto as Exhibit C.

The Draft Guidance was created by EPA with the assistance of the American Wood Preservers Institute and others in the industry.  *Id*. at p. v.  The Draft Guidance was "designed to be a supplement to the annual issue of the Toxic Chemical Inventory Reporting Forms and Instructions.  Id. at p. vi.  In the Draft Guidance, EPA did not identify any source of reportable emissions in the process of manufacturing treated wood after the drip pad.  EPA stated that

> Potential sources of EPCRA Section 313 chemicals and chemical categories are air emissions from storage and working tanks, from the vacuum system, from opening of the retort door, and from volatile components while the treated wood is on the drip pad, spills, and emissions from valves, flanges, and pumps.

*Id*. at 4-36.  See also, Id. at 4-39 ("Air emissions will occur from:  the storage/work tank; opening the retort door; the vacuum system condenser; volatilization from the wastewater treatment system; volatilization from the treated wood on the drip pad; and leaks in valves, flanges and pumps in the preservative application equipment.").  EPA's stance in its draft Guidance is consistent with that taken in the Elkins letter and the TRI Instructions reinforcing the industry's understanding that emissions from stored finished product need not be reported.

Given this additional piece of evidence, there cannot be any doubt that EPA took a definitive position that emissions from finished product in storage need not be reported, a position that it illegally attempted to change in October 2007.

Dated:  April 18, 2008                                    Respectfully submitted,

/s/ Jean-Cyril Walker
_____
Douglas J. Behr (Bar No. 163998)
behr@khlaw.com
Peter L. de la Cruz (Bar No. 362358)
delacruz@khlaw.com
Jean-Cyril Walker (Bar No. 474498)
walker@khlaw.com

KELLER AND HECKMAN LLP
1001 G Street, N.W.
Suite 500 West
Washington, D.C. 20001
Tel.: 202-434-4100
Fax: 202-434-4646

Attorneys for Plaintiffs

**EXHIBIT C**

**Draft EPCRA Section 313 Reporting Guidance for**
**Wood Preserving Operations EPA 745-R-99-012 (November 1999)**

United States
Environmental Protection
Agency

Office of Pollution
Prevention and Toxics
Washington, DC 20460

EPA 745-B-99-002
November 1999

 EPA

# Emergency Planning and Community Right-To-Know Act Section 313 Reporting Guidance for Wood Preserving Operations

Draft









# TABLE OF CONTENTS

|  | Page |
|---|---|
| ACKNOWLEDGMENT | vii |

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

CHAPTER 1 - INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-1

1.0        PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-1
       1.1   Background on EPCRA Section 313 and PPA Section 6607 . . . . . . . . 1-2

CHAPTER 2 - REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-1

2.0        PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-1
       2.1   Must You Report? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-2
       2.2   SIC Code Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4
       2.3   Number of Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6
       2.4   Manufacturing, Processing, and Otherwise Use of EPCRA Section 313 Chemicals or Chemical Categories . . . . . . . . . . . . . . . . . . . . . . . . . 2-7
       2.5   Activity Categories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-9
       2.6   How Do You Report? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-12
       2.7   Form R . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-13
       2.8   Alternate Threshold and Form A . . . . . . . . . . . . . . . . . . . . . . . . 2-14
       2.9   Trade Secrets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-16
       2.10  Recordkeeping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-17

CHAPTER 3 - EPCRA SECTION 313 CHEMICAL OR CHEMICAL CATEGORY ACTIVITY THRESHOLD DETERMINATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-1

3.0        PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-1
       3.1   Step 1 - Identify Which EPCRA Section 313 Chemicals or Chemical Categories are Manufactured (Including Imported), Processed, or Otherwise Used . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-1
       3.2   Step 2 - Identify the Activity Category and Any Exempt Activities for Each EPCRA Section 313 Chemical and Chemical Category . . . . . . . . 3-7
           3.2.1  Concentration Ranges for Threshold Determination . . . . . . . . 3-10
           3.2.2  Evaluation of Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . 3-11
               3.2.2.1 *De Minimis* Exemption . . . . . . . . . . . . . . . . . . . . . . 3-12
               3.2.2.2 Articles Exemption . . . . . . . . . . . . . . . . . . . . . . . . . 3-15
               3.2.2.3 Facility-Related Exemption . . . . . . . . . . . . . . . . . . . . 3-17
               3.2.2.4 Activity-Related Exemptions (Otherwise Use Exemptions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-17
           3.2.3  Additional Guidance on Threshold Calculations for Certain Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-19
               3.2.3.1 Reuse Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-19

**TABLE OF CONTENTS (Continued)**

Page

        3.2.3.2 Remediation Activities . . . . . . . . . . . . . . . . . . . . . . . . 3-20
        3.2.3.3 Recycling Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-21
  3.3    Step 3 - Calculate the Quantity of Each EPCRA Section 313 Chemical and
        Chemical Category and Determine Which Ones Exceed an Activity
        Threshold . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-21

**CHAPTER 4 - ESTIMATING RELEASE AND OTHER WASTE MANAGEMENT
QUANTITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-1

4.0     PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-1
  4.1    General Steps for Determining Release and Other Waste Management
        Activity Quantities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-1
    4.1.1  Step 1: Prepare a Process Flow Diagram . . . . . . . . . . . . . . . . 4-3
    4.1.2  Step 2: Identify EPCRA Section 313 Chemicals and Chemical
        Categories and Potential Sources of Chemical Release and Other
        Waste Management Activities . . . . . . . . . . . . . . . . . . . . . . . . . 4-3
    4.1.3  Step 3: Identify Release and Other Waste Management Activity
        Types . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-4
    4.1.4  Step 4: Determine the Most Appropriate Method(s) and Calculate
        the Estimates for Release and Other Waste Management Activity
        Quantities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-17
        4.1.4.1 Monitoring Data or Direct Measurement (code M) . . . 4-18
        4.1.4.2 Mass Balance (code C) . . . . . . . . . . . . . . . . . . . . . . . 4-19
        4.1.4.3 Emission Factors (code E) . . . . . . . . . . . . . . . . . . . . 4-21
        4.1.4.4 Engineering Calculations (code O) . . . . . . . . . . . . . . 4-23
        4.1.4.5 Estimating Release and Other Waste Management
        Quantities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-24
  4.2    Determination of Release and other Waste Management Quantities from
        Wood Preserving Processes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-30
    4.2.1  Oil-Borne Preservatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-33
    4.2.2  Water-Borne Preservatives . . . . . . . . . . . . . . . . . . . . . . . . . . 4-42

5.0     REFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-1

Appendix A   EPCRA SECTION 313 GUIDANCE RESOURCES
Appendix B   BASIC CALCULATION TECHNIQUES
Appendix C   LIST OF TOXIC CHEMICALS WITHIN THE WATER DISSOCIABLE
             NITRATE COMPOUNDS CATEGORY AND GUIDANCE FOR REPORTING
Appendix D   EPCRA SECTION 313, GUIDANCE FOR REPORTING AQUEOUS
             AMMONIA
Appendix E   UNIT CONVERSION FACTORS

INDEX

# LIST OF TABLES

|  |  | Page |
|---|---|---|
| 2-1 | SIC Codes Covered by EPCRA Section 313 Reporting | 2-4 |
| 2-2 | EPCRA Section 313 Chemicals and Chemical Categories Commonly Encountered in Wood Preserving Operations | 2-8 |
| 2-3 | Activity Categories | 2-10 |
| 3-1 | Reporting Thresholds | 3-7 |
| 3-2 | Definitions and Examples of Manufacturing Subcategories | 3-8 |
| 3-3 | Definitions and Examples of Processing Subcategories | 3-9 |
| 3-4 | Definitions and Examples of Otherwise Use Subcategories | 3-10 |
| 3-5 | EPCRA Section 313 Reporting Threshold Worksheet | 3-24 |
| 3-6 | Sample EPCRA Section 313 Reporting Threshold Worksheet | 3-25 |
| 4-1 | Summary of Liquid Residue Quantities From Pilot-Scale Experimental Study | 4-9 |
| 4-2 | Potential Data Sources for Release and Other Waste Management Calculations | 4-18 |
| 4-3 | Release and Other Waste Management Quantity Estimation Worksheet | 4-26 |
| 4-4 | EPCRA Section 313 Chemicals Typically Found in Water-Born Preservatives | 4-44 |

## LIST OF FIGURES

Page

2-1    EPCRA Section 313 Reporting Decision Diagram ...................... 2-3

4-1    Release and Other Waste Management Activity Calculation Approach ...... 4-2

4-2    Possible Release and Other Waste Management Activity Types for EPCRA
       Section 313 Chemicals and Chemical Categories ....................... 4-5

4-3    Application of Oil-Borne Wood Preserving Chemicals ................. 4-34

4-4    Application of Water-Borne Wood Preserving Chemicals ............... 4-43

# ACKNOWLEDGMENT

The U.S. EPA wishes to acknowledge the valuable contributions made by the staff and members of the American Wood Preservers Institute.  Without the insight provided by those in industry with actual experience in fulfilling the reporting requirements of EPCRA Section 313 we would not have been able to produce a document that we believe will be of great assistance to those who must prepare future EPCRA Section 313  reports.  Special thanks go to George E. Parris, Ph.D., Director of Environmental and Regulatory Affairs, American Wood Preservers Institute and Michael R. Corn, P.E., AqueAeTer; Charles Faulds, Texas Electric Cooperative, Inc.; and Herbert Estreicher, JD, Ph.D., Covington and Burling, for their contributions and hard work.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## OVERVIEW

This document supersedes the booklet entitled *Title III Section 313 Release Reporting Guidance, Estimating Chemical Releases from Wood Preserving Operations*, dated February 1988. It is intended to assist establishments and facilities performing wood preserving operations in complying with the Emergency Planning and Community Right-To-Know Act (EPCRA) Section 313 and Pollution Prevention Act (PPA) Section 6607 reporting requirements, the preparation of Form R or the alternate certification statement, Form A. The EPCRA Section 313 program is commonly referred to as the Toxic Chemical Release Inventory (TRI).

The principal differences in this new document include:

- More detailed examples;
- New EPCRA Section 313 regulations and guidance developed since 1988;
- PPA Section 6607 reporting requirements;
- U.S. Environmental Protection Agency's (U.S. EPA's) interpretive guidance on various issues specific to wood preserving operations; and
- EPCRA Section 313 issues regarding processes not discussed in the earlier documents.

This document is designed to be a supplement to the annual issue of the *Toxic Chemical Release Inventory Reporting Forms and Instructions*, (*TRI Forms and Instructions*). It is organized to provide a step-by-step guide to compliance with EPCRA Section 313 and PPA Section 6607, starting with how to determine if your facility must report and ending with guidance for estimating release and other waste management activity quantities.

It is recognized that not all wood preserving establishments will have all unit operations described in this document. However, each of the unit operations discussed are common operations found in wood preserving establishments covered by EPCRA Section 313 and PPA Section 6607 reporting requirements. You should select the operation, or combination of operations, that most closely fits the activities at your establishment.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Chapter 1 introduces EPCRA Section 313 and PPA Section 6607 reporting and provides a brief background on Section 313 of EPCRA and Section 6607 of PPA.

Chapter 2 discusses reporting requirements and begins with how to determine whether your facility must report. This determination is based on your answers to a series of four questions:

- Is your facility's primary SIC Code on the EPCRA Section 313 list?
- Does your facility employ ten or more full-time employees or the equivalent?
- Does your facility manufacture, process, or otherwise use any EPCRA Section 313 chemicals or chemical categories?
- Does your facility exceed any of the activity thresholds for an EPCRA Section 313 chemical or chemical category?

If the answer to ANY ONE of the first three questions is "No" you are not required to submit an EPCRA Section 313 report. If you answer "Yes" to ALL four questions, the next step is to determine what kind of report you must prepare, a Form R or the alternate certification statement, Form A. Chapter 2 provides detailed information on the requirements for each kind of report. Chapter 2 concludes with a discussion on how to address trade secrets and the records that should be kept to support your reporting.

Chapter 3 discusses how to calculate the activity thresholds (manufacture, process, and otherwise use) for the EPCRA Section 313 chemicals or chemical categories. Information is provided on how to determine which EPCRA Section 313 chemicals or chemical categories your facility manufactures, processes, or otherwise uses and how to calculate the quantities of each. Detailed information is also provided on the various exemptions:

- *De minimis* exemption;
- Article exemption;
- Facility-related exemption; and
- Activity-related exemptions.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Chapter 3 concludes with a discussion of how to determine which EPCRA Section 313 chemicals or chemical categories exceed a reporting threshold.

Chapter 4 discusses how to estimate the release and other waste management activity amounts for those EPCRA Section 313 chemicals and chemical categories for which you must prepare a report. The first part of this chapter provides a step-by-step approach designed to minimize the risk of overlooking an activity involving an EPCRA Section 313 chemical or chemical category and any potential sources or types of release and other waste management activities. This procedure consists of:

- Preparation of a detailed **process flow diagram**;
- Identification of EPCRA Section 313 chemicals and chemical categories and potential **sources** of chemical release and other waste management activities;
- Identification of the potential **types** of release and other waste management activities from each source; and
- Determination of the most appropriate methods for **estimating the quantities** of EPCRA Section 313 chemical and chemical category release and other waste management activities.

The second part of Chapter 4 is organized by the oil-borne and water-borne preservative application operations in wood preserving where EPCRA Section 313 chemicals and chemical categories are used. The commonly used EPCRA Section 313 chemicals and chemical categories, process descriptions, release and other waste management activity estimates, example calculations, and common problems are presented.

This document includes examples and common errors applicable to wood preserving operations. These examples are based on information identified during voluntary site surveys of facilities that have filed EPCRA Section 313 reports in the past, discussion with representatives of the American Wood Preservers Institute, and on questions received by the EPCRA Hotline.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

# CHAPTER 1 - INTRODUCTION

## 1.0        PURPOSE

The purpose of this guidance manual is to assist facilities performing wood preserving in complying with the reporting requirements of Section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) and of Section 6607 of the Pollution Prevention Act of 1990 (PPA). This manual explains the EPCRA Section 313 reporting requirements and discusses specific release and other waste management activities encountered at many facilities that conduct these wood preserving operations. Since each plant is unique, the recommendations presented may have to be modified for your particular facility.

This manual is intended solely for guidance and does not alter any statutory or regulatory requirements. The document should be used in conjunction with the appropriate statutes and regulations but does not supersede them. Accordingly, the reader should consult other applicable documents (for example, the statute, the Code of Federal Regulations (CFR), relevant preamble language, and the current *Toxic Chemical Release Inventory Reporting Forms and Instructions (TRI Forms and Instructions)*).

This document supersedes the 1988 document entitled *Title III Section 313 Release Reporting Guidance, Estimating Chemical Releases from Wood Preserving Operations.* This new document includes:

- More detailed examples;
- New EPCRA Section 313 regulations and guidance developed since 1988;
- PPA Section 6607 reporting requirements;
- U.S. Environmental Protection Agency's (U.S. EPA's) interpretive guidance on various issues specific to wood preserving operations; and
- EPCRA Section 313 issues regarding processes not discussed in the earlier document.

It is intended to supplement the *TRI Forms and Instructions* document that is updated and published annually by U.S. EPA. It is essential that you use the current version of the *TRI Forms*

*and Instructions* to determine if (and how) you should report. Changes or modifications to EPCRA Section 313 reporting requirements are reflected in the annual *TRI Forms and Instructions* and should be reviewed before compiling information for the report.

The objectives of this manual are to:

- Reduce the level of effort expended by those facilities that prepare an EPCRA Section 313 report; and
- Increase the accuracy and completeness of the data being reported.

U.S. EPA cannot anticipate every potential issue or question that may apply to your facility. Therefore, this manual attempts to address those issues most prevalent or common for wood preserving operations. Used in conjunction with the most current *TRI Forms and Instructions* and *Estimating Releases and Waste Treatment Efficiencies for the Toxic Chemical Release Inventory Form (1999 version)*, facilities should be able to provide complete and accurate information for EPCRA Section 313 reporting. Additional discussions on specific issues can be found in U.S. EPA's current edition of *EPCRA Section 313, Questions and Answers* (the 1998 edition is EPA 745-B-98-004), which is available on the U.S. EPA's TRI website (**http://www.epa.gov/opptintr/tri**) or by contacting the **EPCRA Hotline at 1-800-424-9346**. In the Washington DC metropolitan area, call 703-412-9810.

## 1.1      Background on EPCRA Section 313 and PPA Section 6607

The following overview of EPCRA Section 313 and Section 6607 of the PPA, will provide you with a basic understanding of the objectives and requirements of this program, and will help you in completing your forms.

One of the primary goals of EPCRA is to increase the public's knowledge of, and access to, information on both the presence of toxic chemicals in their communities and on releases into the environment and other waste management activities of those chemicals. EPCRA Section 313 requires certain designated businesses (see SIC Code discussion, Chapter 2,

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Section 2.2) to submit annual reports (commonly referred to as Form R reports and Form A reports) on over 600 EPCRA Section 313 chemicals and chemical categories and the amounts released or otherwise managed as waste, even if there are no releases or other waste management quantities associated with these chemicals. Throughout this document, whenever EPCRA Section 313 chemicals are discussed, the discussion includes chemical categories, as appropriate. Chemicals or chemical categories may be added or deleted from the list. Therefore, before completing your annual report, be sure to check the most current list included with the *TRI Forms and Instructions* when evaluating the chemicals and chemical categories in use at your facility. Copies of the reporting package can be requested from the EPCRA Hotline, 1-800-424-9346.

All facilities meeting the EPCRA Section 313 reporting criteria must report the annual release and other waste management activity quantities (routine and accidental) of EPCRA Section 313 chemicals and chemical categories to all environmental media. A separate report is required for each EPCRA Section 313 chemical or chemical category that is manufactured (including imported), processed, or otherwise used above the reporting threshold. The reports must be submitted to U.S. EPA and State or Tribal governments, on or before July 1, for activities in the previous calendar year. The owner/operator of the facility on July 1 is primarily responsible for the report, even if the owner/operator did not own the facility during the reporting year. However, property owners with no business interest in the operation of the facility, other than a lessor interest, are exempt from reporting requirements.

EPCRA also mandates U.S. EPA to establish and maintain a publicly available database system consisting of the information reported under Section 313 and under Section 6607 of the PPA. This database, known as the Toxic Chemical Release Inventory (TRI) database, can be accessed through the following sources:

- U.S. EPA Internet site, http://www.epa.gov/opptintr/tri;
- Envirofacts Warehouse Internet site, http://www.epa.gov/enviro/;
- CD-ROM from the Government Printing Office;
- Microfiche in public libraries;

- Magnetic tape and diskettes from the National Technical Information Service; and
- Right-to-know network, http://www.rtk.net/trisearch.html/

Information qualifying as trade secret, in accordance with the regulatory requirements, is protected from public release. In addition to being a resource for the public, TRI data are also used in the research and development of regulations related to EPCRA Section 313 chemicals and chemical categories.

To reduce the reporting burden for small businesses, U.S. EPA established an alternate activity threshold of one million pounds manufactured, processed, or otherwise used for facilities with total annual reportable amounts of 500 pounds or less of the EPCRA Section 313 chemical or chemical category. Provided the facility does not exceed either the reportable amount or the alternate threshold, the facility may file a certification form (Form A) rather than a Form R. By filing the Form A the facility certifies that they do not exceed the reportable amount of 500 pounds or exceed the alternate threshold of one million pounds.

Note that the annual reportable amount includes the quantity of the EPCRA Section 313 chemical or chemical category in all production-related waste management activities, not just releases (see the discussion in Section 2.8 for more detail). Also note that either a Form A or a Form R, but not both, must be submitted for each EPCRA Section 313 chemical or chemical category above any reporting threshold, even if there are zero release and other waste management activity quantities.

Violation of EPCRA Section 313 reporting provisions may result in federal civil penalties of up to $27,500 per day for each violation (61 FR 69360). State enforcement provisions may also be applicable depending on the state's EPCRA Section 313 reporting regulations.

Members of the American Wood Preservers Institute provided input on common problems, specific to wood preserving operations, encountered by those completing the EPCRA

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Section 313 reports. U.S. EPA has combined this input with questions forwarded to the EPCRA Hotline and those identified during voluntary site surveys of facilities that have filed EPCRA Section 313 reports in the past. Selected issues and guidance addressing these common problems are presented throughout this document as applicable.

The *TRI Forms and Instructions* also contains discussion of common problems in completing the EPCRA Section 313 reports. You are encouraged to read the document before filling out the Form R (or Form A) for your facility.

If, after reading this manual, you still have questions about EPCRA Section 313 reporting, please contact the EPCRA Hotline at 1-800-424-9346. Assistance is also available from the designated EPCRA Section 313 Coordinator in the U.S. EPA regional office and the EPCRA contact in your state (see the *TRI Forms and Instructions* for a current list of these contacts). Additional guidance is also available in the resources listed in Appendix A.

# CHAPTER 2 - REPORTING REQUIREMENTS

## 2.0    PURPOSE

The purpose of this chapter is to help you determine if you must prepare an EPCRA Section 313 report(s) and, if so, what kind of a report(s) should be prepared (Form R or the alternate certification statement, the Form A). This chapter presents the EPCRA Section 313 reporting requirements to help you determine if these requirements apply to your facility. It also discusses the reporting of trade secrets and the records that must be kept.

To understand the following discussion you must first understand how EPCRA defines a facility. The term "facility" is defined as, "all buildings, equipment, structures, and other stationary items which are located on a single site or on contiguous or adjacent sites and which are owned or operated by the same person (or by any person who controls, who is controlled by, or who is under common control with such person). A facility may contain more than one "establishment" (40 CFR 372.3). An "establishment" is defined as, "an economic unit, generally at a single physical location, where business is conducted, or where services or industrial operations are performed" (40 CFR 372.3).

U.S. EPA recognizes that for business reasons it may be easier and more appropriate for multiple establishments at one facility to report separately. However, the combined quantities of EPCRA Section 313 chemicals and chemical categories manufactured, processed, or otherwise used in all establishments in that facility must be considered for threshold determinations. Also, the combined release and other waste management activity quantities reported singly for each establishment must total those for the facility as a whole.

Note that if a facility is comprised of more than one establishment, once an activity threshold is met by the facility, providing the facility meets SIC Code and employee criteria, release and other waste management activities from all establishments at the facility must be reported.

---

**Example - Multiple Establishments**

Your facility has several different establishments, all with SIC Codes covered under EPCRA Section 313. One establishment used 7,000 pounds of toluene, an EPCRA Section 313 chemical, during the year to clean equipment. Another establishment purchased and used 4,000 pounds of toluene during the year as a solvent to separate a component from a mixture, with recovery of the toluene for reuse. Both activities constitute otherwise use of the EPCRA Section 313 chemical (as presented in Section 2.5 and described in detail in Chapter 3) and the total for the facility exceeded the 10,000-pound otherwise use threshold for the year. Thus, if your facility meets the employee threshold, you must file one Form R for toluene from your facility, or two Form Rs, one from each establishment. Please note that you may be eligible to file one Form A for the facility but you cannot file a separate Form A for each establishment.

---

[Note to reviewer: Is this situation common in wood preserving facilities? If so, since toluene is not one of the commonly reported EPCRA Section 313 chemicals (see Table 2-2), which EPCRA Section 313 chemical would be involved?]

## 2.1    Must You Report?

How do you determine if your facility must prepare an EPCRA Section 313 report? Your answers to the following four questions will help you decide (illustrated by Figure 2-1):

1) Is the primary SIC Code for your facility included in the list covered by EPCRA Section 313 reporting (see Section 2.2)?

2) Does your facility have 10 or more full-time employees or the equivalent (see Section 2.3)?

3) Does your facility manufacture (which includes importation), process, or otherwise use EPCRA Section 313 chemicals or chemical categories (see Section 2.4)?

4) Does your facility exceed any applicable thresholds of EPCRA Section 313 chemicals or chemical categories (25,000 pounds per year for manufacturing; 25,000 pounds per year for processing; or 10,000 pounds per year for otherwise use - see Section 2.5)?

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999



**Figure 2-1.  EPCRA Section 313 Reporting Decision Diagram**

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

If you answered "No" to any of the first three questions, you are not required to prepare any EPCRA Section 313 reports. If you answered "Yes" to ALL of the first three questions, you must complete a threshold calculation for each EPCRA Section 313 chemical at the facility, and submit an EPCRA Section 313 report for each chemical and chemical category exceeding the applicable threshold.

## 2.2    SIC Code Determination

Facilities with the SIC Codes presented in Table 2-1 are covered by the EPCRA Section 313 reporting requirements.

## Table 2-1

## SIC Codes Covered by EPCRA Section 313 Reporting

| SIC Codes | Industry | Qualifiers |
|---|---|---|
| 10 | Metal Mining | Except SIC Codes 1011, 1081, and 1094 |
| 12 | Coal Mining | Except SIC Code 1241 |
| 20 through 39 | Manufacturing | None |
| 4911, 4931, and 4939 | Electric and Other Services and Combination Utilities | Limited to facilities that combust coal and/or oil for the purpose of generating electricity for distribution in commerce |
| 4953 | Refuse Systems | Limited to facilities regulated under RCRA Subtitle C |
| 5169 | Chemicals and Allied Products | None |
| 5171 | Petroleum Bulk Stations and Terminals | None |
| 7389 | Business Services | Limited to facilities primarily engaged in solvent recovery services on a contract or fee basis |

Wood preserving facilities generally are classified in SIC Code 2491. You should determine the SIC Code(s) for your facility, based on the activities on site. For assistance in determining which SIC Code best suits your facility refer to *Standard Industrial Classification Manual, 1987* published by the Office of Management and Budget.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Note that auxiliary facilities can assume the SIC Code of another covered establishment if the primary function is to support the covered establishment's operations. For the purpose of EPCRA Section 313, auxiliary facilities are defined as those that are primarily engaged in performing support services for another covered establishment or multiple establishments of a covered facility, and are in a different physical location from the primary facility. In addition, auxiliary facilities perform an integral role in the primary facility's activities. In general, the auxiliary facility's basic administrative services (e.g., paperwork, payroll, employment) are performed by the primary facility. If an auxiliary facility's primary function is to support/service a facility with a covered SIC Code, the auxiliary facility assumes the covered SIC Code as its primary SIC Code and therefore is covered by the EPCRA Section 313 reporting requirements. However, if the SIC Code for the primary facility is not covered by EPCRA Section 313, then neither the primary nor the auxiliary facility is required to submit a report.

If your facility has more than one SIC Code (i.e., several establishments with different SIC Codes are owned or operated by the same entity and are located at your facility), you are subject to reporting requirements if:

- All the establishments have SIC Codes covered by EPCRA Section 313; OR

- The total value of the products shipped or services provided at establishments with covered SIC Codes is greater than 50% of the value of the entire facility's products and services; OR

- Any one of the establishments with a covered SIC Code ships and/or produces products or provides services whose value exceeds the value of services provided, products produced and/or shipped by any other establishment within the facility.

A pilot plant within a covered SIC Code is considered a covered facility and is subject to reporting, provided it meets the employee and activity criteria (note that pilot plants are not eligible for the laboratory exemption, which is discussed in Chapter 3). Warehouses on the same site as facilities in a covered SIC Code are also subject to reporting. Likewise,

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

warehouses that qualify as auxiliary facilities of covered facilities also must report, provided all applicable reporting requirements are met.

While you are currently required to determine your facility's reporting eligibility based on the SIC code system described above, it is important to be aware that the SIC code system will be replaced by a new system in the future. On April 9, 1997 (62 FR 17287), the Office of Management and Budget promulgated the North American Industrial Classification System (NAICS). NAICS is a new economic classification system that replaces the SIC code system as a means of classifying economic activities for economic forecasting and statistical purposes. The transition to the new NAICS may require regulatory actions. As a result, the SIC code system is still required to be used as the mechanism to determine your facility's reporting eligibility. EPA will issue notice in the *Federal Register* to inform you and other EPCRA Section 313 facilities of its plans to adopt the NAICS and how facilities should make their NAICS code determination.

## 2.3    **Number of Employees**

If your facility meets SIC Code and activity threshold criteria, you are required to prepare an EPCRA Section 313 report if your facility has 10 or more full-time employees or the equivalent. A full-time employee equivalent is defined as a work year of 2,000 hours. If your facility's employees aggregate 20,000 or more hours in a calendar year, you meet the 10 or more employee criterion.

The following information should be included in your employee calculations:

- Owners;
- Operations/manufacturing staff;
- Clerical staff;
- Temporary employees;
- Sales personnel;
- Truck drivers (employed by the facility);
- Other non-manufacturing or off-site facility employees directly supporting the facility;

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- Paid vacation and sick leave; and
- Contractor employees (maintenance, construction, etc. but excluding contracted truck drivers and minor intermittent service vendors (e.g., trash handlers)).

In general, if an individual is employed or hired to work at the facility, all the hours worked (including paid leave and overtime) by that individual must be counted in determining if the 20,000-hour criterion has been met.

---

### Example - Employee Equivalent Calculation

Your facility has six full-time employees working 2,000 hours/year. You also employ two full-time sales people and a delivery truck driver (employed by the facility) who are assigned to the plant, each working 2,000 hours/year but predominantly on the road or from their homes. The wastewater treatment system (on site and owned by the facility) is operated by a contractor who spends an average of two hours per day and five days per week at the plant. Finally, you built an addition to the plant warehouse during the year, using four contractor personnel who were on site full time for six months (working on average of 1,000 hours each). You would calculate the number of full-time employee equivalents as follows:

- Hours for your nine full-time employees (six plant personnel, two salespeople, and one delivery truck driver) are:
  (9 employees) × (2,000 hours/year) = 18,000 hours/year

- Hours for the wastewater treatment system operator are:
  (2 hours/day) × (5 days/week) × (52 weeks/year) = 520 hours/year; and

- Hours for the construction crew are:
  (4 contractors) × (1,000 hours) = 4,000 hours/year.

Your facility has a total of 22,520 hours for the year, which is above the 20,000 hours/year threshold; therefore, you meet the employee criterion.

---

## 2.4     Manufacturing, Processing, and Otherwise Use of EPCRA Section 313 Chemicals or Chemical Categories

If you are in a covered SIC Code and have 10 or more full-time employee equivalents, you must determine which EPCRA Section 313 chemicals and chemical categories are manufactured, processed, or otherwise used at your facility. You should prepare a list which includes all chemicals and chemical categories found in mixtures and trade name products at all establishments at the facility. This list should then be compared to the CURRENT list of EPCRA Section 313 chemicals and chemical categories found in the *TRI Forms and Instructions* document for that reporting year (also available from the EPCRA Hotline, 1-800-424-9346).

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Once you identify the EPCRA Section 313 chemicals and chemical categories at your facility, you must evaluate the activities involving each chemical and chemical category and determine if any activity thresholds are met.

The original list of chemicals and chemical categories subject to EPCRA Section 313 reporting was a combination of lists from New Jersey and Maryland. Refinements to the list have been made and changes are anticipated to continue. The list can be modified by U.S. EPA initiatives or industry or the public can petition U.S. EPA to modify the list. When evaluating a chemical or chemical category for addition or deletion from the list, U.S. EPA must consider the chemical's potential acute human health effects, chronic human health effects, or its adverse environmental effects. U.S. EPA reviews these petitions and initiates a rulemaking to add or delete the chemical or chemical category from the list, or publishes an explanation why it denied the petition.

Note that chemicals and chemical categories are periodically added, delisted, or modified. Therefore, it is imperative that you refer to the appropriate reporting year's list. Also, note that a list of synonyms for EPCRA Section 313 chemicals and chemical categories can be found in the U.S. EPA publication *Common Synonyms for Chemicals Listed Under Section 313 of the Emergency Planning and Community Right-To-Know Act*, (EPA 745-R-95-008). Table 2-2 lists the EPCRA Section 313 chemicals and chemical categories commonly encountered in wood preserving operations. This list is not intended to be all inclusive and should only be used as a guide.

## Table 2-2

## EPCRA Section 313 Chemicals and Chemical Categories Commonly Encountered in Wood Preserving Operations
### (Ref: 1995 TRI Database for SIC Code 2491; and AP-42, Section 10.8)

| Chemicals | Process |
|---|---|
| Ammonia (anhydrous and 10% of aqueous) | Water-borne preservative |
| Anthracene* | Creosote component |
| Arsenic | Water-borne preservative |

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

| Chemicals | Process |
|---|---|
| Arsenic compounds | Water-borne preservative |
| Biphenyl* | Creosote component |
| Chromium | Water-borne preservative |
| Chromium compounds | Water-borne preservative |
| Copper | Water-borne preservative |
| Copper compounds | Water-borne preservative |
| Creosote | Creosote preservative |
| Dibenzofuran* | Creosote component |
| Formaldehyde | To be determined |
| Naphthalene* | Creosote component |
| Pentachlorophenol | Pentachlorophenol preservative |
| Phenanthrene* | Creosote component |
| Zinc compounds | Water-borne preservative |

* If present on the facility only as a component of creosote these chemicals need not be reported separately - they are covered by the creosote report.

Coal tar creosote, CAS No. 8001-58-9, an EPCRA Section 313 chemical, is the creosote used in wood preserving applications. It is a mixture of 10,000 or more chemicals (6). Included are several which are also EPCRA Section 313 chemicals, including phenanthrene, anthracene, naphthalene, dibenzofuran, and biphenyl. When these EPCRA Section 313 chemicals are present at the facility only as components of creosote, separate EPCRA Section 313 reports do not need to be prepared as they are included in the EPCRA Section 313 report submitted for creosote.

## 2.5     **Activity Categories**

EPCRA Section 313 defines three activity categories for the listed chemicals and chemical categories: manufacturing (which includes importing), processing, and otherwise use. The activity thresholds are 25,000 pounds per year for manufacturing, 25,000 pounds per year for processing, and 10,000 pounds per year for otherwise use. These thresholds apply to each chemical or chemical category individually. The quantity of chemicals or chemical categories stored on site or purchased is not relevant for threshold determinations. Rather, the determination is based solely on the annual quantity actually manufactured (including imported), processed, or otherwise used. Therefore, EPCRA Section 313 chemicals and chemical categories

that are brought on site and stored, but are not incorporated into a product for distribution or are not otherwise used on site during the reporting year, are not considered towards any activity threshold.

Expanded definitions, with examples, of each of the three activities are found in Chapter 3, Tables 3-2, 3-3, and 3-4. The terms are briefly defined in Table 2-3.

## Table 2-3

## Activity Categories

| Activity Category | Definition | Threshold (lb/yr) |
|---|---|---|
| Manufacture | To produce, prepare, import, or compound an EPCRA Section 313 chemical or chemical category. Manufacture also applies to an EPCRA Section 313 chemical or chemical category that is produced coincidentally during the manufacture, processing, otherwise use, or disposal of another chemical or mixture of chemicals as a byproduct, and an EPCRA Section 313 chemical or chemical category that remains in that other chemical or mixture of chemicals as an impurity during the manufacturing, processing, or otherwise use or disposal of any other chemical substance or mixture. An example of coincidental manufacturing could be the production of ammonia or nitrate compounds in a wastewater treatment system. | 25,000 |
| Process | To prepare an EPCRA Section 313 chemical or chemical category, or a mixture or trade name product containing an EPCRA Section 313 chemical or chemical category, for distribution in commerce. For example, the addition of EPCRA Section 313 listed pigments to paint should be reported if you exceeded the reporting threshold. Processing includes the preparation for sale to your customers (and transferring between facilities within your company) of a chemical or formulation that you manufacture. For example, if you manufacture an EPCRA Section 313 chemical or chemical category or product, package it, and then distribute it into commerce, this chemical has been manufactured AND processed by your facility. | 25,000 |

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 2-3 (Continued)

| Activity Category | Definition | Threshold (lb/yr) |
|---|---|---|
| Otherwise Use | Generally, use of an EPCRA Section 313 chemical or chemical category that does not fall under the manufacture or process definitions is classified as otherwise use. An EPCRA Section 313 chemical or chemical category that is otherwise used does not function by being incorporated into a product that is distributed in commerce, but may instead be used as a manufacturing or processing aid (e.g., catalyst), in waste processing, or as a fuel (including waste fuel). For example, xylene used as a carrier solvent for paint is classified as otherwise used.<br><br>On May 1, 1997 U.S. EPA revised the interpretation of otherwise use. The following new otherwise use definition becomes effective with the 1998 reporting year (62 FR 23834, May 1, 1997):<br><br>Otherwise use means "any use of a toxic chemical contained in a mixture or other trade name product or waste, that is not covered by the terms manufacture or process. Otherwise use of a toxic chemical does not include disposal, stabilization (without subsequent distribution in commerce), or treatment for destruction unless:<br><br>1) The toxic chemical that was disposed, stabilized, or treated for destruction was received from off site for the purposes of further waste management; OR<br><br>2) The toxic chemical that was disposed, stabilized, or treated for destruction was manufactured as a result of waste management activities on materials received from off site for the purposes of further waste management activities." | 10,000 |

### COMMON ERROR - Coincidental Manufacture

The coincidental manufacture of an EPCRA Section 313 chemical, outside the primary product process line but in direct support of the process, is frequently overlooked. For example, a wood processing facility (SIC Code 2491) uses steam heated pressure vessels for the conditioning process. This process uses large quantities of steam which is generated on site by a coal-fired steam plant. The burning of coal will potentially result in the coincidental manufacture of several EPCRA Section 313 chemicals including the aerosol forms of sulfuric and hydrochloric acid, metal compounds, and formaldehyde. The amount of each coincidentally manufactured EPCRA Section 313 chemical must be included in any threshold determinations and, if a threshold is exceeded, any subsequent release and other waste management activity quantity calculations.

Relabeling or redistribution of an EPCRA Section 313 chemical or chemical category where no repackaging occurs does not constitute manufacturing, processing, or otherwise use of that chemical. This type of activity should not be included in threshold determinations.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**Example - Relabeling**

You buy a mixture in small containers that contains an EPCRA Section 313 chemical or chemical category. When it arrives you put your own label on each container and put the containers in a larger box with several other items you manufacture, and sell the larger box as a kit. The quantity of the EPCRA Section 313 chemical or chemical category in the small containers should not be counted toward the processing (because you did not repackage the chemical) or otherwise use thresholds, nor should it be counted toward the manufacturing activity threshold unless the small containers were imported. However, you must consider other EPCRA Section 313 chemicals and chemical categories that you manufactured in the kit toward manufacturing and processing threshold determinations.

---

[Note to reviewer: Is there a specific example of relabeling that would apply to the wood preserving industry, or is this generic example sufficient?]

---

**Example - Treatment of Wastes from Off Site**

A covered facility receives a waste containing 12,000 pounds of Chemical A, an EPCRA Section 313 chemical, from off site. The facility treats the waste, destroying Chemical A and in the treatment process manufactures 10,500 pounds of Chemical B, another EPCRA Section 313 chemical. Chemical B is disposed on site.

Since the waste was received from off site for the purpose of waste management, the amount of Chemical A must be included in the otherwise used threshold determination for Chemical A. The otherwise use threshold is 10,000 pounds and since the amount of Chemical A exceeds this threshold, all release and other waste management activities for Chemical A must be reported.

Chemical B was manufactured in the treatment of a waste received from off site. The quantity of chemical B should be counted towards the manufacturing threshold. However, the facility disposed of Chemical B on site and waste received from off site for treatment for destruction, disposal, or stabilization is considered to be otherwise used. Therefore, the amount of Chemical B must also be considered in the otherwise used threshold determination. Thus, the reporting threshold for Chemical B has also been exceeded and all release and other waste management activities for Chemical B must be reported.

---

Also, note that the threshold determinations for the three activity categories (manufacturing, processing, and otherwise use) are mutually exclusive. That is, you must conduct a separate threshold determination for each activity category and if you exceed any threshold, all release and other waste management activities of that EPCRA Section 313 chemical or chemical category at the facility must be considered for reporting.

## 2.6    How Do You Report?

You must submit an EPCRA Section 313 report for each EPCRA Section 313 chemical or chemical category that exceeds a threshold for manufacturing, OR processing, OR

otherwise use (providing you meet the employee and SIC Code criteria). Provided you do not exceed certain alternate activity thresholds and total annual reportable amounts, you may prepare a Form A (See Section 2.8) rather than a Form R. The *TRI Forms and Instructions* contain detailed directions for the preparation and submittal of EPCRA Section 313 reports for the reporting year. The *TRI Forms and Instructions* are sent to all facilities that submitted EPCRA Section 313 reports the preceding year. However, if you do not receive a courtesy copy, you may request copies of the *TRI Forms and Instructions* from the EPCRA Hotline (1-800-424-9346).

## 2.7     **Form R**

Form R is the report in which the information required by EPCRA Section 313 is reported. If you are submitting a Form R, it is essential that you use the *TRI Forms and Instructions* for the appropriate reporting year. U.S. EPA encourages the electronic submittal of the Form R, via the Automated Toxic Chemical Release Inventory Reporting Software (ATRS). Use of the ATRS will save preparation time in data entry and photocopying and reduce errors via on-line validation routines and use of pick lists. The ATRS can be found on the Internet at:

> •     **http://www.epa.gov/opptintr/atrs**

The ATRS is available in both DOS and Windows versions. More information can be found in the *TRI Forms and Instructions* and by calling the ATRS User Support Hotline at (703) 816-4434.

The Form R consists of two parts:

> Part I, Facility Identification Information. This part may be photocopied and re-used for each Form R you submit, except for the signature, which must be original for each submission.

> Part II, Chemical Specific Information. You must complete this part separately for each EPCRA Section 313 chemical or chemical category; it cannot be reused year to year even if reporting has not changed.

Submission of incomplete EPCRA Section 313 reports may result in issuance of a Notice of Technical Error (NOTE), Notice of Significant Error (NOSE), or Notice of Non-compliance (NON). See the current *TRI Forms and Instructions* for more detailed information on completing the Form R and submitting the EPCRA Section 313 report.

## 2.8    Alternate Threshold and Form A

U.S. EPA developed the Form A, also referred to as the "Certification Statement," to reduce the annual reporting burden for facilities with minimal amounts of EPCRA Section 313 chemicals or chemical categories released and otherwise managed as waste (59 FR 61488, November 1994; applicable beginning reporting year 1994 and beyond). On Form A, you certify that you are not required to report the release and other waste management information required by EPCRA Section 313 and PPA Section 6607. A facility must meet the following two criteria to use a Form A:

- First, the total annual reportable amount of the EPCRA Section 313 chemical or chemical category cannot exceed 500 pounds per year. The "reportable amount" is defined as the sum of the on-site amounts released (including disposal), treated, combusted for energy recovery, and recycled, combined with the sum of the amounts transferred off site for recycling, energy recovery, treatment, and/or release (including disposal). This total corresponds to the total of data elements 8.1 through 8.7 on the 1998 version of the Form R.
- Second, the amount of the EPCRA Section 313 chemical or chemical category manufactured, processed, OR otherwise used cannot exceed one million pounds. It is important to note that the quantities for each activity are mutually exclusive and must be evaluated independently. If the quantity for any one of the activities exceeds 1,000,000 pounds a Form A cannot be used.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**Example - Form A Threshold**

If the combined annual reportable amounts from all activities do not exceed 500 pounds, a facility that manufactures 900,000 pounds of an EPCRA Section 313 chemical or chemical category and processes 150,000 pounds of the same chemical or chemical category is eligible to use the Form A because the facility did not exceed the one million pounds for either activity, even though the total usage exceeds one million pounds.

---

The Form A Certification Statement must be submitted for each eligible EPCRA Section 313 chemical or chemical category. The information on the Form A will be included in the publicly accessible TRI database; however, these data are marked to indicate that they represent certification statements rather than Form Rs. Note that separate establishments at a facility cannot submit separate Form As for the same chemical or chemical category; rather, only one Form A per EPCRA Section 313 chemical or chemical category can be submitted per facility.

While Form A requests facility identification and chemical identification information, no release and other waste management quantity estimations to any media are required. You must simply certify that the total annual reportable amount did not exceed 500 pounds and that amounts manufactured, processed, or otherwise used did not exceed one million pounds. Once the facility has completed estimates to justify the submission of a Form A, there is a considerable time savings in using the Form A, especially in subsequent years, providing activities involving the chemical or chemical category did not change significantly. It is strongly recommended that you document your initial rationale and refer to it every year, to verify that you have not modified a part of the process that would invalidate the initial rationale supporting submission of Form A.

---

**COMMON ERROR – Form A Eligibility**

Many wood preservation facilities using water-borne EPCRA Section 313 metal compound preservative chemicals may be eligible to use the Alternative Certification Form, Form A, for their EPCRA Section 313 reporting of some of the EPCRA Section 313 chemicals and chemical categories they use. The very high level of direct reuse of the preservation chemicals results in very small release and other waste management activity quantities. If the amount processed during the year is 1,000,000 pounds or less of the metal compound and the total annual reportable amount of the parent metal is less than 500 pounds, you may use the Form A for your EPCRA reporting. As long as there are no changes in your operations that would potentially cause the processed amount or the reportable amount to exceed the above amounts, you can save significant time in the preparation of EPCRA Section 313 reports for subsequent years.

---

## 2.9      **Trade Secrets**

If you submit trade secret information, you must prepare two versions of the substantiation form as prescribed in 40 CFR Part 350 (see 53 FR 28801, July 29, 1988) as well as two versions of the EPCRA Section 313 report.  One set of reports should be "sanitized" (i.e., it should provide a generic name for the EPCRA Section 313 chemical or chemical category identity).  This version will be made available to the public.  The second version, the "unsanitized" version, should provide the actual identity of the EPCRA Section 313 chemical or chemical category and have the trade secret claim clearly marked in Part I, Section 2.1 of the Form R or Form A.  The trade secrets provision only applies to the EPCRA Section 313 chemical or chemical category identity.  All other parts of the Form R or Form A must be filled out accordingly.

Individual states may have additional criteria for confidential business information and the submittal of both sanitized and unsanitized reports for EPCRA Section 313 chemicals and chemical categories.  Facilities may jeopardize the trade secret status of an EPCRA Section 313 chemical or chemical category by submitting an unsanitized version to a state agency or tribal government that does not require an unsanitized version.

More information on trade secret claims, including contacts for individual state's submission requirements, can be found in the *TRI Forms and Instructions*.

## 2.10      **Recordkeeping**

Complete and accurate records are absolutely essential to meaningful compliance with EPCRA Section 313 reporting requirements.  Compiling and maintaining good records will help you to reduce the effort and cost in preparing future reports, and to document how you arrived at the reported data in the event of U.S. EPA compliance audits.  U.S. EPA requires you to maintain records substantiating each EPCRA Section 313 report submission for a minimum of

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

three years. Each facility must keep copies of every EPCRA Section 313 report along with all supporting documents, calculations, work sheets, and other forms that you use to prepare the EPCRA Section 313 report. U.S. EPA may request this supporting documentation during a regulatory audit.

Specifically, U.S. EPA requires the following records be maintained for a period of three years from the date of the submission of a report (summarized from 40 CFR 372.10):

1)   A copy of each EPCRA Section 313 report that is submitted.

2)   All supporting materials and documentation used to make the compliance determination that the facility or establishment is a covered facility.

3)   Documentation supporting the report submitted, including:

- Claimed allowable exemptions,
- Threshold determinations,
- Calculations for each quantity reported as being released, either on or off site, or otherwise managed as waste,
- Activity determinations, including dates of manufacturing, processing, or use,
- The basis of all estimates,
- Receipts or manifests associated with transfers of each EPCRA Section 313 chemical or chemical category in waste to off-site locations, and
- Waste treatment methods, treatment efficiencies, ranges of influent concentrations to treatment, sequential nature of treatment steps, and operating data to support efficiency claims.

4)   For facilities submitting a Form A, all supporting materials used to make the compliance determination the facility or establishment is eligible to submit a Form A, including:

- Data supporting the determination the alternate threshold applies,
- Calculations of the annual reportable amounts, and
- Receipts or manifests associated with the transfer of each EPCRA Section 313 chemical or chemical category in waste to off-site locations.

Because EPCRA Section 313 reporting does not require additional testing or monitoring you must determine the best readily available source of information for all estimates.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Some facilities may have detailed monitoring data and off-site transfer records that can be used for estimates while others may only have purchase and inventory records. Examples of records that you should keep, if applicable, might include:

- Each EPCRA Section 313 report submitted;
- EPCRA Section 313 Reporting Threshold Worksheets (sample worksheets can be found in Chapter 3 of this document as well as in the *TRI Forms and Instructions)*;
- EPCRA Section 313 Reporting Release and Other Waste Management Quantity Estimation Worksheets (sample worksheets can be found in Chapter 4 of this document);
- Engineering calculations and other notes;
- Purchase records from suppliers;
- Inventory data;
- National Pollutant Discharge Elimination System (NPDES)/State Pollutant Discharge Elimination System (SPDES) permits and monitoring reports;
- New Source Performance Standards (NSPS);
- EPCRA Section 312, Tier II reports;
- Monitoring records;
- Air permits;
- Flow measurement data;
- Resource Conservation and Recovery Act (RCRA) hazardous waste generator's reports;
- Pretreatment reports filed with local governments;
- Invoices from waste management firms;
- Manufacturer's estimates of treatment efficiencies;
- Comprehensive Environmental Response, Conservation, and Liability Act of 1980 (CERCLA) Reportable Quantity (RQ) reports;
- RCRA manifests; and
- Process flow diagrams (including emissions, releases, and other waste management activities).

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

# CHAPTER 3 - EPCRA SECTION 313 CHEMICAL OR CHEMICAL CATEGORY ACTIVITY THRESHOLD DETERMINATIONS

## 3.0     PURPOSE

This chapter provides a step-by-step procedure for determining if any EPCRA Section 313 chemicals or chemical categories exceed a reporting threshold. Threshold determinations are essentially a three step process:

**Step 1)**      Identify any EPCRA Section 313 chemicals and chemical categories you manufacture/import, process, or otherwise use.

**Step 2)**      Identify the activity category and any exempt activities for each EPCRA Section 313 chemical or chemical category.

**Step 3)**      Calculate the quantity of each EPCRA Section 313 chemical or chemical category and determine which ones exceed an activity threshold.

## 3.1     Step 1 - Identify Which EPCRA Section 313 Chemicals or Chemical Categories are Manufactured (Including Imported), Processed, or Otherwise Used

Compile lists of all chemicals and mixtures at your facility. For facilities with many different chemicals and mixtures it is often helpful to prepare two lists: one with the pure (single ingredient) chemicals (including chemical compounds) and one with the mixtures and trade name products. On the second list, under the name of each mixture/trade name product, write the names of all chemicals in that product. Next, compare the chemicals and chemical categories on both lists to the current EPCRA Section 313 chemicals and chemical categories list found in the *TRI Forms and Instructions* (remember that chemicals and chemical categories may be periodically added and deleted and you should use the current reporting year's instructions). Highlight the EPCRA Section 313 chemicals and chemical categories that are on your lists.

Review the lists to be sure each chemical and chemical category is shown by its correct EPCRA Section 313 name. For example, a common EPCRA Section 313 chemical

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

found in wood preserving operations is pentachlorophenol. Pentachlorophenol (Chemical Abstracts Service (CAS) Registry No. 87-86-5) has several synonyms including chlor, fungifen, lauxtol, phenchlorol, permason, and Woodtreat A. It must be reported on Form R (or Form A), Item 1.2, by its EPCRA Section 313 chemical name, pentachlorophenol. Synonyms can be found in the U.S. EPA document *Common Synonyms for Chemicals Listed Under Section 313 of the Emergency Planning and Community Right-to-Know Act* (EPA 745-R-95-008).

While you must consider every chemical and chemical category on the EPCRA Section 313 chemical and chemical category list, you should be aware of the chemicals and chemical categories typically used in wood preserving operations. As a guide, the EPCRA Section 313 chemicals and chemical categories reported by wood preserving facilities, and the processes they are typically used in, are listed in Table 2-2.

A computerized spreadsheet may be helpful in developing your facility's chemical and chemical category list and performing threshold calculations. The spreadsheet could show the chemical, chemical category or chemical mixture with corresponding component concentrations; the yearly quantity manufactured, processed, or otherwise used; and the CAS Registry number. The spreadsheet could also be designed to identify the total quantity by activity category (amounts manufactured, processed, and otherwise used) for each EPCRA Section 313 chemical or chemical category in every mixture, compound, and trade name product.

An initial investment of time will be required to develop this spreadsheet; however, the time and effort saved in threshold calculations in subsequent years will be significant. Such a system will also reduce the potential of inadvertently overlooking EPCRA Section 313 chemicals or chemical categories present in mixtures purchased from off-site sources.

To develop the chemical and chemical category list and the associated activity categories you may want to consult the following:

- Material Safety Data Sheets (MSDSs);

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- Facility purchasing records;
- New Source Performance Standards (NSPS);
- Inventory records;
- Air and water discharge permits;
- Individual manufacturing/operating functions; and
- Receipts or manifests associated with the transfer of each EPCRA Section 313 chemical and chemical category in waste to off-site locations.

The following is suggested useful information needed to prepare your EPCRA Section 313 reports and should be included for each chemical and chemical category on your spreadsheet:

- The mixture name and associated EPCRA Section 313 chemical and chemical category names;
- The associated CAS Registry numbers;
- The trade name for mixtures and compounds;
- The throughput quantities; and
- Whether the chemical or chemical category is manufactured, processed, or otherwise used at the facility (be sure to include quantities that are coincidentally manufactured and imported, as appropriate).

MSDSs are one of the best sources of information for the type and composition of chemicals and chemical categories in mixtures, and for determining whether you have purchased raw materials that contain EPCRA Section 313 chemicals and chemical categories. As of 1989, chemical suppliers to facilities in SIC Major Group Codes 20 through 39 are required to notify manufacturing customers of any EPCRA Section 313 chemicals and chemical categories present in mixtures or trade name products distributed to facilities. The notice must be provided to the receiving facility and may be attached or incorporated into that product's MSDS. If no MSDS is required, the notification must be in a letter that accompanies the first shipment of the product to your facility each year. This letter must contain the chemical name, CAS Registry number, and the weight or volume percent (or a range) of the EPCRA Section 313 chemical or chemical category in mixtures or trade name products.

Carefully review the entire MSDS. Although new MSDSs must list whether EPCRA Section 313 chemicals and chemical categories are present, the language and location of

this notification is not currently standardized. Depending on the supplier, this information could be found in different sections of the MSDS. The most likely sections of an MSDS to provide information on EPCRA Section 313 chemicals and chemical categories are:

- Physical properties/chemical composition section;
- Regulatory section;
- Hazardous components section;
- Labeling section; and
- Additional information section.

Also, many EPCRA Section 313 chemicals or chemical categories are present as impurities in mixtures. These quantities must also be considered in threshold determinations unless the concentration is below the *de minimis* value (see Section 3.2.2.1). In some cases, if the EPCRA Section 313 chemical or chemical category is present below the *de minimis* concentration, it may be exempt.

### Qualifiers

Several chemicals on the EPCRA Section 313 chemical and chemical category list include qualifiers related to use or form. Some chemicals are reportable ONLY if manufactured by a specified process or classified in a specified activity category. For example, isopropyl alcohol is only reportable if it is manufactured using the strong acid process and saccharin is reportable only if it is manufactured. Some other chemicals are only reportable if present in certain forms. For example, only yellow or white phosphorus is reportable, while black or red phosphorus is not reportable.

The qualifiers and associated chemicals and chemical categories are presented below.

- **Aluminum oxide (fibrous)** - Aluminum oxide is only subject to threshold determination and release and other waste management calculations when it is handled in fibrous forms. U.S. EPA has characterized fibrous aluminum oxide for purposes of EPCRA Section 313 reporting as a man-

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

made fiber commonly used in high-temperature insulation applications such as furnace linings, filtration, gaskets, joints, and seals.

- **Ammonia** - (includes anhydrous ammonia and aqueous ammonia from water dissociable ammonium salts and other sources)  On June 26, 1995, U.S. EPA qualified the listing for ammonia (CAS Registry No. 7664-41-7) and deleted ammonium sulfate (solution) (CAS Registry No. 7783-20-2) from the EPCRA Section 313 chemical list.  Both the qualification and the deletion were effective as of reporting year 1994.  The qualifier for ammonia means that anhydrous forms of ammonia are 100% reportable while only 10% of the total aqueous ammonia is reportable.  Any evaporation of ammonia from aqueous ammonia solutions is considered anhydrous ammonia.  This qualifier applies to both activity threshold determinations and release and other waste management calculations.  Note that while ammonium sulfate is no longer an EPCRA Section 313 chemical, 10% of the aqueous ammonia formed from the dissociation of ammonium sulfate (and all other ammonium salts) is reportable, and must be included in both activity threshold determinations and release and other waste management calculations.  Additionally, any ammonium nitrate must also be included in the threshold determination and the nitrate portion included in the release and other waste management calculations, for the nitrate compounds category.  U.S. EPA has published guidance on reporting for ammonia and ammonium salts in *Emergency Planning and Community Right-to-Know, EPCRA Section 313, Guidance for Reporting Aqueous Ammonia,* EPA 745-R-95-012 (see Appendix D).

- **Asbestos (friable)** - Asbestos only needs to be considered when it is handled in the friable form.  Friable refers to the physical characteristics of being able to crumble, pulverize, or reduce to a powder with hand pressure.

- **Fume or dust** - Three metals (aluminum, vanadium, and zinc) are qualified with "fume or dust."  This definition excludes "wet" forms such as solutions or slurries, but includes powder, particulate, or gaseous forms of these metals.  There is no particle size limitation for particulates.  For example, use of zinc metal as a paint component is not subject to reporting unless the zinc is in the form of a fume or dust.  However, even though elemental zinc is reportable only in the fume or dust form, all forms of zinc compounds are reportable.  Note that the entire weight of all zinc compounds should be included in the threshold determination for zinc compounds, while only the metal portion of metal compounds is reported in the release and other waste management amounts.

- **Hydrochloric acid (acid aerosols)** - On July 25, 1996, U.S. EPA promulgated a final rule delisting non-aerosol forms of hydrochloric acid (CAS Registry No. 7647-01-0) from the EPCRA Section 313 chemical list

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

(effective for the 1995 reporting year). Therefore, threshold determinations and release and other waste management estimates now apply only to the aerosol forms. Under EPCRA Section 313, the term aerosol covers any generation of airborne acid (including mists, vapors, gas, or fog) without any particle size limitation. Therefore, any process that sprays hydrochloric acid "manufactures" hydrochloric acid aerosol and should include this quantity in the manufacturing threshold determination.

- **Manufacturing qualifiers** - Two chemicals, saccharin and isopropyl alcohol, contain qualifiers relating to manufacture. The qualifier for saccharin means that only manufacturers of the chemical are subject to the reporting requirement. The qualifier for isopropyl alcohol means that only facilities that manufacture the chemical by the strong acid process are required to report. Facilities that only process or otherwise use these chemicals are not required to report. Thus, a facility that uses isopropyl alcohol as a solvent should not report for isopropyl alcohol.

- **Nitrate Compounds (water dissociable; reportable only in aqueous solution)** - A nitrate compound is covered by this listing only when in water and if water dissociable. Although the complete weight of the nitrate compound must be used for threshold determinations for the nitrate compounds category, only the nitrate portion of the compound must be considered for release and other waste management calculations. One issue recently raised by industry is how to report nitrate compounds in wastewater and sludge that is applied to farms as a nitrogen source (either on site or off site). Although during such use, nitrate compounds may be taken up by plants and cycled back to the ecosystem, U.S. EPA considers that the nitrate compounds in wastewater/sludge to be managed as waste. These compounds should be reported as being disposed to land (either on site or off site as appropriate). U.S. EPA has published guidance for these chemicals in *List of Toxic Chemicals Within the Water Dissociable Nitrate Compounds Category and Guidance for Reporting*, EPA 745-R-96-004 (see Appendix C).

- **Phosphorus (yellow or white)** - Only manufacturing, processing, or otherwise use of phosphorus in the yellow or white chemical forms require reporting. Black and red phosphorus are not subject to EPCRA Section 313 reporting.

- **Sulfuric acid (acid aerosols)** - On June 26, 1995, U.S. EPA promulgated a final rule delisting non-aerosol forms of sulfuric acid (CAS Registry No. 7664-93-9) from the EPCRA Section 313 toxic chemical list (effective for the 1994 reporting year). Therefore, threshold determinations and release and other waste management estimates now apply only to the aerosol forms. Under EPCRA Section 313, the term aerosol covers any generation

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

of airborne acid (including mists, vapors, gas, or fog) without any particle size limitation. Therefore, any process that sprays sulfuric acid "manufactures" sulfuric acid aerosol and should include this quantity in the manufacturing threshold determination. U.S. EPA has published guidance for acid aerosols in *Guidance for Reporting Sulfuric Acid*, EPA 745-R-97-007.

**3.2     Step 2 - Identify the Activity Category and Any Exempt Activities for Each EPCRA Section 313 Chemical and Chemical Category**

The next step is to identify the activity category (or categories) and any exempt activities for each EPCRA Section 313 chemical and chemical category on your list. Table 3-1 lists the reporting thresholds for each of these activity categories (Tables 3-2 through 3-4 provide detailed definitions of subcategories for each activity category). Each threshold must be individually calculated; they are mutually exclusive and are not additive.

### Table 3-1

### Reporting Thresholds

| Activity Category | Threshold |
|---|---|
| Manufacture (including import) | 25,000 pounds per year |
| Process | 25,000 pounds per year |
| Otherwise use | 10,000 pounds per year |

---

**Example - Threshold Determination**

If your facility manufactures 22,000 pounds of an EPCRA Section 313 chemical or chemical category and you also otherwise use 8,000 pounds of the same chemical or chemical category, you have not exceeded either threshold, and an EPCRA Section 313 report for that chemical or chemical category is not required. However, if your facility manufactures 28,000 pounds per year of an EPCRA Section 313 chemical or chemical category and otherwise uses 8,000 pounds of the same chemical or chemical category, you have exceeded the manufacturing threshold and ALL release and other waste management quantities (except those specifically exempted) of that chemical or chemical category must be reported on the Form R, including those from the otherwise use activity.

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**COMMON ERROR - Threshold Determination for Recirculation**

Facilities often incorrectly base threshold calculations on the amount of EPCRA Section 313 chemicals or chemical categories in a recirculation system rather than the amount actually used in the reporting year. The amount of the EPCRA Section 313 chemical or chemical category that is actually manufactured (including the quantity imported), processed, or otherwise used, not the amount in storage or in the system, should be the amount applied to the threshold determination. For example, a solvent containing an EPCRA Section 313 chemical or chemical category is used, recirculated on site, and reused as a solvent. The amount of EPCRA Section 313 chemical or chemical category recirculated in the on-site recycling process is not considered in the threshold determination because it is considered a "direct reuse" and is not reportable. Only the amount of new chemical added to the system should be included in the otherwise used threshold calculation. However, if you send a solvent containing an EPCRA Section 313 chemical or chemical category off site for distillation and subsequent recycling, it should be reported as a transfer to an off-site location for recycling (Part II, Sections 6.2 and 8.5 of the 1998 Form R) because the distillation is considered a waste management activity. The amount of solvent returned to you and subsequently used in the same reporting year must be included in the threshold determination. If the reporting threshold is exceeded, the total quantity recycled should be reported in Section 8.4, i.e., the amount recycled must be reported in Section 8.4 each time it is recycled.

---

Each of the activity categories is divided into subcategories. As discussed in the *TRI Forms and Instructions*, you are required to designate EACH category and subcategory that applies to your facility. Detailed definitions, including descriptions of subcategories for each activity and selected examples, are presented in Tables 3-2, 3-3, and 3-4.

## Table 3-2

## Definitions and Examples of Manufacturing Subcategories

| Manufacturing Activity Subcategory | Definition | Examples in Wood Preserving Operations* |
|---|---|---|
| Produced or imported for on-site use/processing | A chemical or chemical category that is produced or imported and then further processed or otherwise used at the same facility. | Arsenic compounds, chromium compounds, copper compounds |
| Produced or imported for sale/distribution | A chemical or chemical category that is produced or imported specifically for sale or distribution outside the manufacturing facility. | |
| Produced as a byproduct | A chemical or chemical category that is produced coincidentally during the production, processing, or otherwise use of another chemical substance or a mixture and is separated from that substance or mixture. EPCRA Section 313 chemicals or chemical categories produced and released as a result of waste treatment or disposal are also considered byproducts. | Ammonia, nitrate compounds |

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 3-2 (Continued)

| Manufacturing Activity Subcategory | Definition | Examples in Wood Preserving Operations* |
|---|---|---|
| Produced as an impurity | A chemical or chemical category that is produced coincidentally as a result of the manufacture, processing, or otherwise use of another chemical and remains primarily in the mixture or product with that other chemical. | |

*More complete discussions of the industry-specific examples can be found in Chapter 4 of this guidance manual.

## Table 3-3

## Definitions and Examples of Processing Subcategories

| Processing Activity Subcategory | Definition | Examples in Wood Preserving Operations* |
|---|---|---|
| Reactant | A natural or synthetic chemical or chemical category used in chemical reactions for the manufacture of another chemical substance or product. Examples include feedstocks, raw materials, intermediates, and initiators. | Chromium, copper, and arsenic compounds |
| Formulation component | A chemical or chemical category that is added to a product or product mixture prior to further distribution of the product and acts as a performance enhancer during use of the product. Examples include additives, dyes, reaction diluents, initiators, solvents, inhibitors, emulsifiers, surfactants, lubricants, flame retardants, and rheological modifiers. | Ammonia, 1,2,4-trimethylbenzene (may be present above *de minimis* in diesel fuel - check MSDS), PAC(such as benzo(a)anthracene) (may be present above *de minimis* in No. 6 fuel oil - check MSDS), flame retardants (check MSDS for EPCRA Section 313 chemicals and chemical categories) |
| Article component | A chemical or chemical category that becomes an integral component of an article distributed for industrial, trade, or consumer use. | Chromium, copper, arsenic, and zinc compounds, creosote, pentachlorophenol |
| Repackaging only | A chemical or chemical category that is processed or prepared for distribution in commerce in a different form, state, or quantity. May include, but is not limited to, the transfer of material from a bulk container, such as a tank truck, to smaller containers such as cans or bottles. | |

*More complete discussions of the industry-specific examples can be found in Chapter 4 of this guidance manual.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 3-4

## Definitions and Examples of Otherwise Use Subcategories

| Otherwise Use Activity Subcategory | Definition | Examples in Wood Preserving Operations* |
|---|---|---|
| Chemical processing aid | A chemical or chemical category that is added to a reaction mixture to aid in the manufacture or synthesis of another chemical substance but is not intended to remain in or become part of the product or product mixture. Examples include process solvents, catalysts, inhibitors, initiators, reaction terminators, and solution buffers. | Ammonia |
| Manufacturing aid | A chemical or chemical category that aids the manufacturing process but does not become part of the resulting product and is not added to the reaction mixture during the manufacture or synthesis of another chemical substance. Examples include process lubricants, metalworking fluids, coolants, refrigerants, and hydraulic fluids. | |
| Ancillary or other use | A chemical or chemical category that is used for purposes other than aiding chemical processing or manufacturing. Examples include cleaners, degreasers, lubricants, fuels (including waste fuels), and chemicals used for treating wastes. | Nitrate (added as a nutrient in wastewater treatment), biocides used in cooling towers (check MSDS for EPCRA Section 313 chemicals and chemical categories). |

*More complete discussions of the industry-specific examples can be found in Chapter 4 of this guidance manual.

---

### Example – Chemical Processing Aid

Your wood preserving facility uses ammonia to enhance penetration of the wood in the application ACQ-A and ACZA preservative solutions. Ideally, all the ammonia would evaporate, however, studies have shown that a small amount of the ammonia remains in the treated wood. Since the function of the ammonia is to improve the penetration of the preservatives and is a non-incorporative activity, the entire amount of ammonia is considered otherwise used. If the ammonia's function was such that it was intended to remain with the treated wood, it would be considered processed, as is the case for the copper, zinc, and arsenic compounds intended to remain in the treated wood.

---

3.2.1    **Concentration Ranges for Threshold Determination**

You should use the best, readily available information, or where such data are not available, reasonable estimates, for all calculations in EPCRA Section 313 reporting; however,

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

the exact concentration of an EPCRA Section 313 chemical or chemical category in a mixture or trade name product may not be known. The supplier or MSDS may only list ranges, or upper or lower bound concentrations. U.S. EPA has developed guidance on how to use information in this situation for threshold determinations.

- If the concentration is provided as a lower and upper bound or as a range, you should use the mid-point in your calculations for the threshold determination. For example, the MSDS for the trade name product states methanol is present in a concentration of not less than 20% and not more than 40%, or it may be stated as present at a concentration between 20 to 40%. You should use the mid-point value of 30% methanol in your threshold calculations.

- If only the lower bound concentration of the EPCRA Section 313 chemical or chemical category is specified and the concentration of other components are given, subtract the other component values from 100%. The remainder should be considered the upper bound for the EPCRA Section 313 chemical or chemical category and you should use the given lower bound to calculate the mid-point as discussed above. For example, the MSDS states that a solvent contains at least 50% methyl ethyl ketone (MEK) and 20% non-hazardous surfactants. Subtracting the non-hazardous contents from 100% leaves 80% as the upper bound for MEK. The mid-point between upper (80%) and lower (50%) bounds is 65%, the value you should use in your threshold calculation.

- If only the lower bound is specified and no information on other components is given, you should assume the upper bound is 100% and calculate the mid-point as above.

- If only the upper bound concentration is provided, you should use this value in your threshold calculation.

Special guidance for concentration ranges that straddle the *de minimis* value is presented in Section 3.2.2.1.

## 3.2.2    Evaluation of Exemptions

When determining thresholds, you can exclude quantities of any EPCRA Section 313 chemicals and chemical categories that are manufactured, processed, or otherwise used in exempt activities. Exemptions are divided into four classes:

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

1.     *De minimis* exemption;
2.     Article exemption;
3.     Facility-related exemption; and
4.     Activity-related exemptions.

---

**COMMON ERROR - Exempt Activities**

If an EPCRA Section 313 chemical or chemical category is used in exempt activities, the quantity in these activities does not need to be included in your threshold determinations or release and other waste management calculations, even if the chemical or chemical category is used in a reportable activity elsewhere in the facility.

---

### 3.2.2.1     *De Minimis* Exemption

If the amount of EPCRA Section 313 chemical(s) or chemical categories present in a mixture or trade name product processed or otherwise used is below its *de minimis* concentration level, that amount is considered to be exempt from threshold determinations and release and other waste management calculations (note that this exemption does not apply to manufacturing, except for importation or as an impurity as discussed below). The *de minimis* concentration for EPCRA Section 313 chemicals and chemical categories is 1%, except for Occupational Safety and Health Administration (OSHA)-defined carcinogens, which have a 0.1% *de minimis* concentration. Note that if a mixture contains more than one member of an EPCRA Section 313 chemical category, the weight percent of all members must be summed. If the total meets or exceeds the category's *de minimis* level, the *de minimis* exemption does not apply. U.S. EPA has published several detailed questions and answers and a directive in the current edition of *EPCRA Section 313 Questions and Answers* (1998 edition is EPA 745-B-98-004; see Appendix A, Directive #2) that may be helpful if you have additional concerns about the *de minimis* exemption. The *TRI Forms and Instructions* list each EPCRA Section 313 chemical and chemical category with the associated *de minimis* value.

---

**Example - *De Minimis***

Your facility otherwise uses diesel fuel containing 1.0% 1,2,4-trimethylbenzene and 0.5% naphthalene. The *de minimis* exemption would apply to naphthalene because the concentration is below 1% which is the *de minimis* level for manganese; however, it would not apply to 1,2,4-trimethylbenzene. All of the 1,2,4-trimethylbenzene must be included in threshold determinations, and release and other waste management calculations.

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

The *de minimis* exemption also applies to EPCRA Section 313 chemicals and chemical categories that are coincidentally manufactured below the *de minimis* level only if that chemical is as an impurity in a mixture that is subsequently distributed in commerce. In addition, the exemption applies to EPCRA Section 313 chemicals and chemical categories below the *de minimis* concentration in an imported mixture or trade name product.

For some mixtures the concentration of EPCRA Section 313 chemicals and chemical categories may be available only as a range. U.S. EPA has developed guidance on how to determine quantities applicable to threshold determinations, and release and other waste management calculations when this range straddles the *de minimis* value. In general, only the quantity of the processed or otherwise used EPCRA Section 313 chemical or chemical category whose concentration exceeds the *de minimis* must be considered. Therefore, U.S. EPA allows facilities to estimate the quantity below the *de minimis* and exclude it from further consideration. The following examples illustrate this point.

---

### Examples - *De Minimis* Concentration Ranges

Example 1:

A wood preserving facility otherwise uses 3,200,000 pounds of diesel fuel containing 0.25 to 1.25% 1,2,4-trimethylbenzene. 1,2,4-trimethylbenzene is subject to a 1% *de minimis* concentration exemption. The amount of mixture subject to reporting is the quantity containing 1,2,4-trimethylbenzene at or above the *de minimis* concentration:

$$(3,200,000) \times (0.0125 - 0.0099) \div (0.0125 - 0.0025)$$

The average concentration of 1,2,4-trimethylbenzene that is not exempt (at or above the *de minimis*) is:

$$(0.0125 + 0.01) \div 2$$

Therefore, the amount of 1,2,4-trimethylbenzene that is subject to threshold determination and release and other waste management estimates is:

$$\left[ \frac{(3,200,000) \times (0.0125 - 0.0099)}{(0.0125 - 0.0025)} \right] \times \left[ \frac{(0.0125 + 0.01)}{2} \right] = 9,360 \text{ pounds}$$

= 9,360 pounds 1,2,4-trimethylbenzene (which is below the otherwise used threshold)

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

In this example, because the facility's information pertaining to 1,2,4-trimethylbenzene was available to two decimal places, 0.99% was used to determine the amount below the *de minimis* concentrations. If the information was available to one decimal place, 0.9% should be used, as in Example 2 below.

Example 2:

As in Example 1,1,2,4-trimethlbenzene is present in a mixture, of which 3,200,000 pounds is otherwise used. The MSDS states the mixture contains 0.2% to 1.2%1,2,4-trimethylbenzene. The amount of mixture subject to reporting (at or above *de minimis*) is:

$$(3,200,000) \times (0.012 - 0.009) \div (0.012 - 0.002)$$

The average concentration of 1,2,4-trimethylbenzene that is not exempt (at or above *de minimis*) is:

$$(0.012 + 0.01) \div 2$$

Therefore, the amount of 1,2,4-trimethylbenzene that is subject to threshold determinations and release and other waste management estimates is:

$$\left[ \frac{(3,200,000) \times (0.012 - 0.009)}{(0.012 - 0.002)} \right] \times \left[ \frac{(0.012 + 0.01)}{2} \right] = 10,560 \text{ pounds}$$

$$= 10,560 \text{ pounds } 1,2,4\text{-trimethylbenzene (which is above the otherwise used threshold)}$$

The exemption does not apply to EPCRA Section 313 chemicals and chemical categories coincidentally manufactured as byproducts and separated from the product, nor does it apply to EPCRA Section 313 chemicals and chemical categories coincidentally manufactured as a result of waste management activities, from either on site or off site. (Under EPCRA Section 313, U.S. EPA does not consider waste to be a mixture.) For example, many facilities treat waste solvents by incinerating them. If coal is used as the primary fuel source to incinerate these waste solvents, combustion can result in the coincidental manufacture of sulfuric and hydrochloric acid aerosols and metal compounds. Since the *de minimis* exemption does not apply to the coincidental manufacture of EPCRA Section 313 chemicals or chemical categories as a byproduct or in a waste treatment process, the formation of these compounds must be considered for threshold determinations, and release and other waste management calculations.

Once the *de minimis* level has been equaled or exceeded, the exemption no longer applies to that process stream, even if the EPCRA Section 313 chemical or chemical category later falls below the *de minimis* concentration. All release and other waste management activities

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

that occur after the *de minimis* concentration has been equaled or exceeded are subject to reporting. The facility does not have to report release and other waste management activities that took place before the *de minimis* concentration was equaled or exceeded.

**3.2.2.2    Articles Exemption**

An article is defined as a manufactured item that:

- Is formed to a specific shape or design during manufacture;
- Has end-use functions dependent in whole or in part upon its shape or design; and
- Does not release an EPCRA Section 313 chemical or chemical category under normal conditions of processing or otherwise use of the item at the facility.

If you receive a manufactured article from another facility and process or otherwise use it without changing the shape or design, and your processing or otherwise use does not result in the release of more than 0.5 pound of the EPCRA Section 313 chemical or chemical category in a reporting year from all like articles, then the EPCRA Section 313 chemical or chemical category in that article is exempt from threshold determinations and release and other waste management calculations.

The shape and design can be changed somewhat during processing and otherwise use as long as part of the item retains the original dimensions. That is, as a result of processing or otherwise use, if an item retains its initial thickness or diameter, in whole or in part, then it still meets the article definition. If the item's original dimensional characteristics are totally altered during processing or otherwise use, the item would not meet the definition. As an example, items that do not meet the definition would be items that are cold extruded, such as lead ingots formed into wire or rods. However, cutting a manufactured item into pieces that are recognizable as the article would not change the exemption status as long as the diameter and the thickness of the item remain unchanged. For instance, metal wire may be bent and sheet metal may be cut, punched, stamped, or pressed without losing the article status as long as no change is

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

made in the diameter of the wire or tubing or the thickness of the sheet and no releases above 0.5 pound per year occur for all like articles.

Any processing or otherwise use of an article that results in a release above 0.5 pound per year for each EPCRA Section 313 chemical or chemical category for all like articles negates the exemption. Cutting, grinding, melting, or other processing of a manufactured item could result in a release of an EPCRA Section 313 chemical or chemical category during normal conditions of use and, therefore, could negate the article exemption if the total releases from all like articles exceed 0.5 pound in a year. However, if all of the resulting waste is recycled or reused, either on site or off site, so that the release of the EPCRA Section 313 chemical or chemical category does not exceed 0.5 pound, then the article's exemption status is maintained. If the processing or otherwise use of similar manufactured items results in a total release of less than or equal to 0.5 pound of any individual EPCRA Section 313 chemical or chemical category to any environmental media in a calendar year, U.S. EPA will allow this quantity to be rounded to zero and the manufactured items maintain their article status. The 0.5-pound limit does not apply to each individual article, but applies to the sum of all release and other waste management activity quantities from processing or otherwise use of like articles for each EPCRA Section 313 chemical or chemical category. The current edition of *EPCRA Section 313 Questions and Answers* (1998 edition is EPA 745-B-98-004) presents several specific question and answers/discussions pertaining to the articles exemption.

---

### COMMON ERROR – Off-spec Treated Poles

The article exemption does not apply to articles that are manufactured at the facility. For example, your facility manufactures and treats telephone poles and the treated product must meet quality standards established by the telephone company. After the poles have been treated, samples are taken to insure the quality criteria have been achieved. Poles that do not meet the standards are discarded in a RCRA Subtitle C landfill or combusted for energy recovery. The poles do not meet the article exemption as they were manufactured at your facility and the quantity of the EPCRA Section 313 chemicals and chemical categories in the poles must be considered in threshold determination, and in release and other waste management estimates.

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**3.2.2.3**       **Facility-Related Exemption**

**Laboratory Activity Exemption**

EPCRA Section 313 chemicals and chemical categories that are manufactured, processed, or otherwise used in laboratories under the supervision of a technically qualified individual are exempted from the threshold determination (and subsequent release and other waste management calculations). This exemption may be applicable in circumstances such as laboratory sampling and analysis, research and development, and quality assurance and quality control activities. It does not include pilot plant scale or specialty chemical production. It also does not include laboratory support activities. For example, chemicals used to maintain laboratory equipment are not eligible for the laboratory exemption.

---

**Example - Laboratory Activity Exemption**

As a quality control method to determine depth of preservative penetration, wood plugs are removed from randomly selected pentachlorophenol treated telephone poles and analyzed in an on-site laboratory. The laboratory is under the supervision of a technically qualified individual. The EPCRA Section 313 chemicals and chemical categories otherwise used in the laboratory in the performance of the analytical procedures are exempt from reporting under the laboratory exemption.

---

**3.2.2.4**       **Activity-Related Exemptions (Otherwise Use Exemptions)**

Some exemptions apply to the otherwise use of an EPCRA Section 313 chemical and chemical category. The specific quantities of EPCRA Section 313 chemicals and chemical categories used in these activities do not need to be included in facility threshold determinations (nor the associated release and other waste management calculations). The following otherwise use activities are considered exempt:

- **EPCRA Section 313 chemicals and chemical categories used in routine janitorial or facility grounds maintenance.** Examples are bathroom cleaners, fertilizers, and garden pesticides similar in type or concentration found in consumer products. Materials used to clean process equipment do not meet this exemption.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- **Personal use of items.** Examples are foods, drugs, cosmetics, and other personal items including those items within the facility such as in a facility operated cafeteria, store, or infirmary. Office supplies such as correction fluid are also exempt.

---

**Example - Personal Use Exemption**

Aqueous ammonia used to clean a cafeteria grill is exempt from threshold determinations and release and other waste management calculations.

---

- **Structural components of the facility.** Exemptions apply to EPCRA Section 313 chemicals and chemical categories present in materials used to construct, repair, or maintain structural components of a facility. An example common to all facilities would be the solvents and pigments used to paint buildings. Materials used to construct, repair, or maintain process equipment are not exempt.

- **EPCRA Section 313 chemicals and chemical categories used with facility motor vehicles.** This exemption includes the use of EPCRA Section 313 chemicals and chemical categories for the purpose of maintaining motor vehicles operated by the facility. Common examples include gasoline, radiator coolant, windshield wiper fluid, brake and transmission fluid, oils and lubricants, cleaning solutions, and solvents in paint used to touch up the vehicle. Motor vehicles include cars, trucks, forklifts, locomotives, and aircraft. Note that this exemption applies to the OTHERWISE USE of EPCRA Section 313 chemicals and chemical categories. The coincidental manufacture of EPCRA Section 313 chemicals and chemical categories resulting from combustion of gasoline is not exempt and should be considered toward the manufacturing threshold.

---

**Example - Motor Vehicle Exemption**

Methanol is purchased for use as a processing aid and as a windshield washer anti-freeze in company vehicles. The amount used for the latter purpose would be subtracted from the facility total **BEFORE** the facility total is compared to the activity threshold. Even if the facility still exceeds the otherwise use threshold, the amount in the anti-freeze is exempt from release and other waste management calculations.

---

This exemption does NOT apply to stationary equipment. The use of lubricants and fuels for stationary process equipment (e.g., pumps and compressors) and stationary energy sources (e.g., furnaces, boilers, heaters), are NOT exempt.

---

**Example - Process Equipment Chemical Use**

Lubricants containing EPCRA Section 313 chemicals and chemical categories used on facility vehicles, or on-site structural maintenance activities that are not integral to the process, are exempt activities. However, lubricants used to maintain pumps and compressors that aid facility process operations are not exempt and the amount of the EPCRA Section 313 chemicals and chemical categories in the lubricant should be applied to the otherwise use threshold.

---

- **EPCRA Section 313 chemicals and chemical categories in certain air or water drawn from the environment or municipal sources.** Included are EPCRA Section 313 chemicals and chemical categories present in process water and non-contact cooling water drawn from the environment or a municipal source, or chemicals and chemical categories present in air used either as compressed air or as an oxygen source for combustion.

---

**Example - Chemicals in Process Water**

A facility uses river water for one of its processes. This water contains approximately 100 pounds of an EPCRA Section 313 chemical or chemical category. The facility ultimately returns all the water that contains the entire 100 pounds of the EPCRA Section 313 chemical or chemical category to the river. The EPCRA Section 313 chemical or chemical category in the water can be considered exempt because the EPCRA Section 313 chemical or chemical category was present as it was drawn from the environment. The facility does not need to consider the EPCRA Section 313 chemical or chemical category drawn with river water for threshold determinations or release and other waste management calculations.

---

## 3.2.3    Additional Guidance on Threshold Calculations for Certain Activities

This section covers three specific situations in which the threshold determination may vary from normal facility operations: reuse, remediation, and recycling activities of EPCRA Section 313 chemicals and chemical categories.

## 3.2.3.1    Reuse Activities

Threshold determinations of EPCRA Section 313 chemicals or chemical categories that are reused at the facility are based only on the amount of the EPCRA Section 313 chemical or chemical category that is added to the system during the year, not the total volume in the system. For example, a facility operates a refrigeration unit that contains 15,000 pounds of anhydrous ammonia at the beginning of the year. The system is charged with 2,000 pounds of

anhydrous ammonia during the year. The facility has therefore otherwise used only 2,000 pounds of the EPCRA Section 313 chemical or chemical category and is not required to report (unless the facility has additional otherwise use activities of ammonia that, when taken together, exceed the reporting threshold). If, however, the whole refrigeration unit was recharged with 15,000 pounds of new or fresh anhydrous ammonia during the year, the facility would exceed the otherwise use threshold, and be required to report.

## 3.2.3.2    Remediation Activities

EPCRA Section 313 chemicals and chemical categories undergoing remediation (e.g., Superfund remediation) are not being manufactured, processed, or otherwise used. Therefore, they are not included in the activity threshold determinations.

However, if you are conducting remediation of an EPCRA Section 313 chemical or chemical category that is also being manufactured, processed, or otherwise used by the facility above an activity threshold level, you must consider this activity for release and other waste management calculations. You must report any release or other waste management quantities of an EPCRA Section 313 chemical or chemical category due to remediation in Part II, Sections 5 through 8, accordingly, of the 1998 Form R. Those quantities would also be considered as part of the amount for determining Form A eligibility. EPCRA Section 313 chemicals and chemical categories used for remediation should be considered toward threshold determinations. If an EPCRA Section 313 chemical or chemical category exceeds one of the reporting thresholds elsewhere at the facility, all release and other waste management activity quantities of that chemical or chemical category must be reported, including release and other waste management activity quantities resulting from remediation.

Excavation (that is considered part of the remedial action ) of material already landfilled does not constitute a manufacturing, processing, or otherwise use activity. However, routine activities (e.g., dredging a lagoon), even if not performed every year, are not considered to be remedial actions and are always subject to reporting.

3.2.3.3        **Recycling Activities**

For on-site recycling and reuse systems, where the same EPCRA Section 313 chemical or chemical category is recycled and reused multiple times, the quantity recycled or reused should be counted only once for threshold calculations. (Please note that for reporting on-site waste management activities the quantity of the EPCRA Section 313 chemical or chemical category should be counted every time it exits the recycling unit in Section 8 of the Form R.) EPCRA Section 313 chemicals and chemical categories recycled off site and returned to the facility should be treated as newly purchased materials for purposes of EPCRA Section 313 threshold determinations.

3.3            **Step 3 - Calculate the Quantity of Each EPCRA Section 313 Chemical and Chemical Category and Determine Which Ones Exceed an Activity Threshold**

The final step is to determine the quantity and which EPCRA Section 313 chemicals and chemical categories exceed an activity threshold. At this point you should have:

1.        Identified each EPCRA Section 313 chemical and chemical category at your facility.

2.        Determined the activity category for each EPCRA Section 313 chemical and chemical category (manufactured, processed, or otherwise used).

Now, you must sum the amount for each EPCRA Section 313 chemical and chemical category by activity category, subtract all exempt quantities, and compare the totals to the applicable thresholds. Each EPCRA Section 313 chemical and chemical category exceeding **any one** of the activity thresholds requires the submission of an EPCRA Section 313 report. Provided you meet certain criteria you may prepare a Form A rather than a Form R (see Section 2.8).

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**COMMON ERROR - Assuming a Threshold is Exceeded**

U.S. EPA recently published a report, *The 1994 and 1995 Toxic Release Inventory Data Quality Report*, EPA 745-R-98-002, with the site survey results of over 100 facilities to evaluate EPCRA Section 313 reporting quality. One of the findings of this survey was that facilities that simply assumed that chemical activity thresholds were exceeded were often in error. This resulted in many of these facilities filing EPCRA Section 313 reports when thresholds were actually not exceeded. Unless the facility has strong grounds to support such an assumption, the time spent in explicitly calculating the activity threshold is well spent.

---

**COMMON ERROR - Zero Release and Other Waste Management Quantities**

If you meet all reporting criteria and exceed any activity threshold for an EPCRA Section 313 chemical or chemical category, you must file an EPCRA Section 313 report for that chemical or chemical category, even if you have zero release and other waste management activity quantities. Exceeding the chemical activity threshold, not the quantity released or otherwise managed as waste determines whether you must report. Note that if the release and other waste management activity quantity is 500 pounds or less you may be eligible to use the alternate certification statement, Form A, rather than a Form R (see Section 2-8).

---

To determine if an EPCRA Section 313 chemical or chemical category exceeds a reporting threshold, you must calculate the annual activity amount of that chemical. Start with the amount of chemical or chemical category at the facility as of January 1, add any amounts brought on site during the year and the amount manufactured (including imported), and subtract the amount left in the inventory on December 31. If necessary, adjust the total to account for exempt activities (see Section 3.2.2 for a discussion of exemptions). You should then compare the result to the appropriate threshold to determine if you are required to submit an EPCRA Section 313 report for that chemical or chemical category. Keep in mind that the threshold calculations are independent for each activity category: manufactured, processed, and otherwise used. If more than one activity category applies, the amount associated with each category is determined separately.

Table 3-5 presents a work sheet that may be helpful when conducting your threshold determinations. Table 3-6 illustrates how the work sheet can be used for the following example:

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

### Example - Threshold Worksheet

Assume your facility purchases in the applicable reporting year, two mixtures that contain xylene (mixed isomers). You purchased 25,000 pounds of Mixture A (which is 50% xylene according to the MSDS) and 110,000 pounds of Mixture B (which contains 20% xylene). Further, you determine that you process the entire quantity of Mixture A, while you process only half of Mixture B and otherwise use the other half. You do not qualify for any exempt activities.

In this example, you would have processed a total of 23,500 pounds of xylene (12,500 pounds from activities associated with Mixture A and 11,000 pounds from activities associated with Mixture B). You would also have otherwise used a total of 11,000 pounds (all from Mixture B). Therefore, you would not have exceeded the 25,000-pound threshold for processing; however, you would have exceeded the 10,000-pound threshold for otherwise use and would be required to submit an EPCRA Section 313 report that includes releases and waste managed quantities from all activities (including processing).

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 3-5. EPCRA Section 313 Reporting Threshold Worksheet

Facility Name: _____
EPCRA Section 313 Chemical or Chemical Category: _____
CAS Registry Number: _____
Reporting Year: _____

Date Worksheet Prepared: _____
Prepared By: _____

**Amounts of chemical or chemical category manufactured, processed, or otherwise used.**

| Mixture Name or Other Identifier | Information Source | Total Weight (lb) | Percent EPCRA Section 313 Chemical or Chemical Category by Weight | EPCRA Section 313 Chemical or Chemical Category Weight (lb) | Amount of the EPCRA Section 313 Chemical or Chemical Category by Activity (lb): | | |
|---|---|---|---|---|---|---|---|
| | | | | | Manufactured | Processed | Otherwise Used |
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| Subtotal: | | | | | (A) _____ lb. | (B) _____ lb. | (C) _____ lb. |

**Exempt quantity of chemical or chemical category that should be excluded.**

| Mixture Name as Listed Above | Applicable Exemption (de minimis, article, facility, activity) | Fraction or Percent Exempt (if Applicable) | Amount of the EPCRA Section 313 Chemical or Chemical Category Exempt from Above (lb): | | |
|---|---|---|---|---|---|
| | | | Manufactured | Processed | Otherwise Used |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| Subtotal: | | | (A₁) _____ lb. | (B₁) _____ lb. | (C₁) _____ lb. |

Amount subject to threshold:  (A-A₁) _____ lb.   (B-B₁) _____ lb.   (C-C₁) _____ lb.

Activity threshold quantities:  25,000 lb.   25,000 lb.   10,000 lb.

Compare to threshold for EPCRA Section 313 reporting.

If any one of the thresholds is exceeded, reporting is required for all activities. [Do not submit this worksheet with Form R, retain it for your records.]

CEB\TRI\WOOD\SECT_123.WPD

3-24

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 3-6.  Sample EPCRA Section 313 Reporting Threshold Worksheet

Facility Name: __Wood Preservers, Inc.__
EPCRA Section 313 Chemical or Chemical Category: __Xylene (mixed isomers)__
CAS Registry Number: __1330-20-7__
Reporting Year: __1998__

Date Worksheet Prepared: __May 1, 1999__
Prepared By: __A.B. Calloway__

Amounts of chemical or chemical category manufactured, processed, or otherwise used.

| Mixture Name or Other Identifier | Information Source | Total Weight (lb) | Percent EPCRA Section 313 Chemical or Chemical Category by Weight | EPCRA Section 313 Chemical or Chemical Category Weight (lb) | Amount of the EPCRA Section 313 Chemical or Chemical Category by Activity (lb): | | |
|---|---|---|---|---|---|---|---|
| | | | | | Manufactured | Processed | Otherwise Used |
| 1. Mixture A | MSDS | 25,000 | 50% | 12,500 | --- | 12,500 | --- |
| 2. Mixture B | MSDS | 110,000 | 20% | 22,000 | --- | 11,000 | 11,000 |
| 3. | | | | | | | |
| 4. | | | | | | | |
| Subtotal: | | | | | (A) 0 lb. | (B) 23,500 lb. | (C) 11,000 lb. |

Exempt quantity of chemical or chemical category that should be excluded.

| Mixture Name as Listed Above | Applicable Exemption (de minimis, article, facility, activity) | Fraction or Percent Exempt (if Applicable) | Amount of the EPCRA Section 313 Chemical or Chemical Category Exempt from Above (lb): | | |
|---|---|---|---|---|---|
| | | | Manufactured | Processed | Otherwise Used |
| 1. Mixture A | none | | | | |
| 2. Mixture B | none | | | | |
| 3. | | | | | |
| 4. | | | | | |
| Subtotal: | | | $(A_1)$ 0 lb. | $(B_1)$ 0 lb. | $(C_1)$ 0 lb. |
| | Amount subject to threshold: | | $(A-A_1)$ 0 lb. | $(B-B_1)$ 23,500 lb. | $(C-C_1)$ 11,000 lb. |
| | Activity threshold quantities: | | 25,000 lb. | 25,000 lb. | 10,000 lb. |

Compare to threshold for EPCRA Section 313 reporting.
If any one of three thresholds is exceeded, reporting is required for all activities. [Do not submit this worksheet with Form R, retain it for your records.]

CEB\TRI\WOODSECT_123.WPD

3-25

# CHAPTER 4 - ESTIMATING RELEASE AND OTHER WASTE MANAGEMENT QUANTITIES

## 4.0    PURPOSE

This chapter is intended to guide the user in developing a systematic approach for estimating quantities of EPCRA Section 313 chemicals and chemical categories released and otherwise managed as waste from wood preserving operations. Figure 4-1 diagrams a recommended approach for estimating quantities of reportable EPCRA Section 313 chemicals or chemical categories.

This chapter also includes common EPCRA Section 313 reporting and compliance issues as they apply to wood preserving facilities. The general discussion (Section 4.1) is followed by a presentation of specific examples and issues (Section 4.2).

## 4.1    General Steps for Determining Release and Other Waste Management Activity Quantities

Release and other waste management activity quantities can be determined by completing the following four steps, described in detail in the following sections.

| | |
|---|---|
| *Step 1)* | Prepare a **process flow diagram**. |
| *Step 2)* | Identify EPCRA Section 313 chemicals and chemical categories and potential **sources** of chemical release and other waste management activities. |
| *Step 3)* | Identify release and other waste management activity **types**. |
| *Step 4)* | Determine the most appropriate method(s) and **calculate the estimates** for release and other waste management activity quantities. |

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999



Figure 4-1:  Release and Other Waste Management Activity Calculation Approach

CEB\TRI\WOODSHEET_4.WPD

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

For EPCRA Section 313 purposes, "sources" means the streams or units that generate the release and other waste management activity (such as process vents, container residue, or spills) and "types" means the environmental media corresponding to elements in Sections 5 through 8 of the 1998 Form R (for example, releases to fugitive air, releases to stack air, discharges to receiving streams or POTWs, or releases to land).

## 4.1.1        Step 1:  Prepare a Process Flow Diagram

Preparing a process flow diagram will help you to identify potential sources and types of EPCRA Section 313 chemicals and chemical categories released and otherwise managed as waste at your facility.  Depending on the complexity of your facility, you may want to diagram individual processes or operations rather than the entire facility.  The diagram should show how materials flow through the processes and identify material input, generation, and output points.  Looking at each operation separately, you can determine where EPCRA Section 313 chemicals and chemical categories are used and the medium to which they may be released or otherwise managed as waste.

## 4.1.2        Step 2:  Identify EPCRA Section 313 Chemicals and Chemical Categories and Potential Sources of Chemical Release and Other Waste Management Activities

Once a process flow diagram has been developed, you must determine the potential sources and the EPCRA Section 313 chemicals and chemical categories that may be released and otherwise managed as waste from each unit operation and process.  Remember to include upsets and routine maintenance activities.   Potential sources include:

- Accidental spills and releases;
- Air pollution control devices (e.g., baghouse, electrostatic precipitators, and scrubbers);
- Clean up and housekeeping practices;
- Combustion byproducts;

- Container residues;
- Fittings;
- Flanges;
- Process discharge stream;
- Process vents;
- Pumps;
- Recycling and energy recovery byproducts;

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- Relief valves;
- Stock pile losses;
- Storage tanks;
- Storm water runoff;
- Tower stacks;

- Transfer operations;
- Treatment sludge;
- Volatilization from process or treatment; and
- Waste treatment discharges.

Next, you must identify the EPCRA Section 313 chemicals and chemical categories that may be released or otherwise managed as waste from each source. A thorough knowledge of the facility operations and processes is required for this determination. You should also consider whether any of the EPCRA Section 313 chemicals or chemical categories are coincidentally manufactured at your facility. Table 2-3 identifies EPCRA Section 313 chemicals and chemical categories typically used in the operations common to wood preserving. This table can be used as an aid in identifying which chemicals and chemical categories are found in your process. The list may not include all the EPCRA Section 313 chemicals and chemical categories your facility uses, and it may include many chemicals and chemical categories that you do not use.

## 4.1.3     Step 3: Identify Release and Other Waste Management Activity Types

For each identified source of an EPCRA Section 313 chemical or chemical category, you should examine all possible release and other waste management activity types. Figure 4-2 schematically represents the possible release and other waste management activity types as they correspond to individual data elements of the Form R. Remember to include both routine operations and accidents when identifying types. This diagram along with the following descriptions can be used as a checklist to make sure all possible types of release and other waste management activities have been considered.

a.   **Fugitive or Non-Point Air Emissions (Part II, Section 5.1 of Form R)** - Includes all emissions to the air that are not released through stacks, vents, ducts, pipes, or any confined air stream. Examples include: -

- Equipment leaks from valves, pump seals, flanges, compressors, sampling connections, open-ended lines, etc.;



**Figure 4-2. Possible Release and Other Waste Management Activity Types for EPCRA Section 313 Chemicals and Chemical Categories**

- Releases from building ventilation systems, such as a roof fan in an open room;
- Evaporative losses from solvent cleaning tanks, surface impoundments, and spills; and
- Emissions from any other fugitive or non-point source.

b.     **Stack or Point Air Emissions (Part II, Section 5.2 of Form R)** - Includes all emissions to the air that occur through stacks, vents, ducts, pipes, or any confined air stream, including the emissions from storage tanks and air pollution control equipment. Air emissions from spray booths are often channeled through vapor recovery systems and/or air pollution control devices, and are considered stack emissions. Note that emissions released from general room air through a ventilation system are not considered stack or point releases for the purpose of EPCRA Section 313 reporting unless they are channeled through an air pollution control device. Instead, they are considered fugitive releases. However, you should note that for certain state reporting requirements not associated

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

    with EPCRA Section 313 reporting some state air quality agencies consider ventilation systems to be a stack or point source.

    c.    **Discharges to Receiving Streams or Water Bodies (Part II, Section 5.3 of Form R)** - Includes direct wastewater discharges to a receiving stream or surface water body. Discharges usually occur under a NPDES or SPDES permit.

    d.    **Underground Injection Onsite to Class I Wells (Part II, Section 5.4.1 of Form R) - and to Class II through V Wells (Part II, Section 5.4.2 of Form R)** - Includes releases into an underground well at the facility. These wells may be monitored under an Underground Injection Control (UIC) Program permit. RCRA Hazardous Waste Generator Reports may be a good source of information for wastes injected into a Class I well. Injection rate meters may provide information for all the well classes.

    e.    **Disposal to Land Onsite (Part II, Section 5.5 of Form R)** - Includes all releases to land on site, both planned (i.e., disposal) and unplanned (i.e., accidental release or spill). The four predefined subcategories for reporting quantities released to land within the boundaries of the facility are:

    (1)    **Landfill** - The landfill may be either a RCRA permitted (Part II, Section 5.5.1A) or a non-hazardous waste landfill (Part II, Section 5.5.1B). Both types are included if they are located on site. Leaks from landfills in the years subsequent to the disposal of the EPCRA Section 313 chemicals or chemical categories in the landfill do not need to be reported as a release.

    (2)    **Land treatment/application farming** - Land treatment is a disposal method in which a waste containing an EPCRA Section 313 chemical or chemical category is applied to or incorporated into soil. Volatilization of an EPCRA Section 313 chemical or chemical category because of the disposal operation must be included in the total fugitive air releases and should be excluded from land treatment/application farming to avoid double counting.

    Sludge and/or aqueous solutions that contain biomass and other organic materials are often collected and applied to farm land. This procedure supplies a nitrogen source for plants and supplies metabolites for microorganisms. U.S. EPA considers this operation to be land treatment/farming if it occurs on site. If a facility sends this material off site for the same purpose, it is considered to be a "transfer to an off-site location, disposal" and should be reported under Sections 6.2 and 8.1 of the Form R.

The ultimate disposition of the chemical or chemical category after application to the land does not change the required reporting. For example, even if the chemical or chemical category is eventually biodegraded by microorganisms or plants, it is not considered recycled, reused, or treated.

(3)    **Surface impoundment** - A surface impoundment is a natural topographic depression, man-made excavation, or diked area formed primarily of earthen materials that is designed to hold an accumulation of wastes containing free liquids. Examples include: holding, settling, storage, and elevation pits; ponds; and lagoons. Quantities of the toxic chemical released to surface impoundments that are used merely as part of a wastewater treatment process generally must not be reported in this section. However, if the sludge from the surface impoundment contains the EPCRA Section 313 chemical or chemical category, then the EPCRA Section 313 chemicals or chemical categories in the sludge must be estimated in this section unless the sludge is removed and subjected to another waste management activity.

(4)    **Other disposal** - Releases to land that do not fit the categories of landfills, land treatment, or surface impoundment are classified as other disposal. This disposal may include any spills or leaks of the EPCRA Section 313 chemical or chemical category to land.

f.    **Discharges to Publicly Owned Treatment Works (POTW) (Part II, Section 6.1 of Form R)** - Includes the amount of EPCRA Section 313 chemical or chemical category in water transferred to an off-site POTW. Note that metals and metal compounds transferred to a POTW must also be reported in Section 8.1.

g.    **Transfers to Other Off-Site Locations (Part II, Section 6.2 of Form R)** - Includes all off-site transfers containing the EPCRA Section 313 chemical or chemical category for the purposes of disposal, treatment, energy recovery, or recycling. Off-site transfer for disposal includes underground injection, landfill/surface impoundment, other land disposal and transfer to a waste broker for disposal. The amount transferred off site for disposal must also be reported in Section 8.1.

Also reported in Section 6.2 would be any residual EPCRA Section 313 chemicals or chemical categories in "empty" containers transferred off site. U.S. EPA expects that all containers (bags, totes, drums, tank trucks, etc.) will have a small amount of residual solids and/or liquid. On-site cleaning of containers must be considered for EPCRA Section 313 reporting. If the cleaning occurs with a solvent (organic or aqueous), you must report the disposition of the waste solvent as appropriate. If the

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

containers are sent off site for disposal or reclamation, you should report the EPCRA Section 313 chemical or chemical category in this section.

---

### **COMMON ERROR - Shipping Container Residue**

Do not overlook residual chemicals or chemical categories in containers or on wrapping materials. U.S. EPA recently published *The 1994 and 1995 Toxic Release Inventory Data Quality Report*, EPA 745-R-98-002, presenting the site survey results of over 100 facilities to evaluate EPCRA Section 313 reporting quality. This survey found the largest source of overlooked release and other waste management activities was from container residue. So-called "empty" drums may contain an inch or more of liquid after draining and similarly "empty" bags and used wrapping materials may contain residues of dust and powder. Even though each individual drum, bag, or wrapper may only contain a small amount of an EPCRA Section 313 chemical or chemical category, for facilities that receive hundreds or thousands of drums or bags each year the annual cumulative amount of an EPCRA Section 313 chemical or chemical category can be substantial. The quantities should typically be reported in Section 6.2. See Table 4-1 for estimates of liquid drum residual and the text of this section for estimates of residual from solids.

---

Actual data and a knowledge of the unloading methods at your facility can be used to estimate the quantity of residual chemicals or chemical categories in containers. However, U.S. EPA has developed guidance to assist facilities if no site-specific information is available. Table 4-1 provides results from a study of liquid residue quantities left in drums and tanks when emptied. These results are presented as the mass percent of the vessel capacity, and are categorized based on unloading method, vessel material, and bulk fluid material properties such as viscosity and surface tension. No testing was conducted for residual solids in this study. If data on site-specific knowledge is available to estimate the quantity of solid residual in containers, it should be considered. If no data are available, U.S. EPA believes an estimate of 1% residual solid is reasonable.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 4-1

## Summary of Liquid Residue Quantities From
## Pilot-Scale Experimental Study[a,b]
## (weight percent of drum capacity)

| Unloading Method | Vessel Type | Value | Material | | | |
|---|---|---|---|---|---|---|
| | | | Kerosene[c] | Water[d] | Motor Oil[e] | Surfactant Solution[f] |
| Pumping | Steel drum | Range<br>Mean | 1.93 - 3.08<br>2.48 | 1.84 - 2.61<br>2.29 | 1.97 - 2.23<br>2.06 | 3.06<br>3.06 |
| Pumping | Plastic drum | Range<br>Mean | 1.69 - 4.08<br>2.61 | 2.54 - 4.67<br>3.28 | 1.70 - 3.48<br>2.30 | Not Available |
| Pouring | Bung-top steel drum | Range<br>Mean | 0.244 - 0.472<br>0.404 | 0.266 - 0.458<br>0.403 | 0.677 - 0.787<br>0.737 | 0.485<br>0.485 |
| Pouring | Open-top steel drum | Range<br>Mean | 0.032 - 0.080<br>0.054 | 0.026 - 0.039<br>0.034 | 0.328 - 0.368<br>0.350 | 0.089<br>0.089 |
| Gravity Drain | Slope-bottom steel tank | Range<br>Mean | 0.020 - 0.039<br>0.033 | 0.016 - 0.024<br>0.019 | 0.100 - 0.121<br>0.111 | 0.048<br>0.048 |
| Gravity Drain | Dish-bottom steel tank | Range<br>Mean | 0.031 - 0.042<br>0.038 | 0.033 - 0.034<br>0.034 | 0.133 - 0.191<br>0.161 | 0.058<br>0.058 |
| Gravity Drain | Dish-bottom glass-lined tank | Range<br>Mean | 0.024 - 0.049<br>0.040 | 0.020 - 0.040<br>0.033 | 0.112 - 0.134<br>0.127 | 0.040<br>0.040 |

[a]From "Releases During Cleaning of Equipment." Prepared by PEI Associates, Inc., for the U.S. Environmental Protection Agency, Office of Pesticides and Toxic Substances, Washington DC Contract No. 68-02-4248. June 30, 1986.
[b]The values listed in this table should only be applied to similar vessel types, unloading methods, and bulk fluid materials. At viscosities greater than 200 centipoise, the residue quantities can rise dramatically and the information on this table is not applicable.
[c]For kerosene, viscosity = 5 centipoise, surface tension = 29.3 dynes/cm$^2$
[d]For water, viscosity = 4 centipoise, surface tension = 77.3 dynes/cm$^2$
[e]For motor oil, viscosity = 97 centipoise, surface tension = 34.5 dynes/cm$^2$
[f]For surfactant solution viscosity = 3 centipoise, surface tension = 31.4 dynes/cm$^2$

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

The following example describes how the information in the table can be used to estimate the quantity of an EPCRA Section 313 chemical or chemical category in water that was used to clean drums on site.

---

### Example - Container Residue

You have determined that a Form R for an EPCRA Section 313 chemical must be submitted. The facility purchases and uses one thousand 55-gallon steel drums that contain a 10% aqueous solution of the chemical. Further, it is assumed that the physical properties of the solution are similar to water. The solution is pumped from the drums directly into a mixing vessel and the "empty" drums are triple-rinsed with water. The rinse water is indirectly discharged to a POTW and the cleaned drums are sent to a drum reclaimer.

From Table 4-1, the average drum residue quantity for this scenario is 2.29%. In this example, it can be assumed that all of the residual solution in the drums was transferred to the rinse water. Therefore, the quantity of the EPCRA Section 313 chemical transferred to the drum reclaimer should be reported as "zero."

The annual quantity of residual solution that is transferred to the rinse water can be estimated by multiplying the mean weight percent of residual solution remaining in a pumped steel drum by the total annual weight of solution in the drums. If the density is not known, it may be appropriate to use the density of water (8.34 pounds per gallon):

$$(0.0229) \times (55 \text{ gal/drum}) \times (1,000 \text{ drums}) \times (8.34 \text{ lb/gal}) = 10,504 \text{ pounds solution.}$$

The concentration of the EPCRA Section 313 chemical in the solution is only 10%.

$$(10,504 \text{ lb solution}) \times (0.10) = 1,050 \text{ pounds of the EPCRA Section 313 chemical.}$$

Therefore, 1,050 pounds of the EPCRA Section 313 chemical are transferred to the POTW, and should be reported in Part II, Sections 6.1 and 8.7 of the 1998 Form R. Because metals cannot be destroyed, they cannot be reported as being treated, and metals and the metal portions of metal compounds should be reported in Part II, Sections 6.1 and 8.1 of the 1998 Form R.

---

h.    **On-Site Waste Treatment (Part II, Section 7A of Form R)** - Includes all on-site waste treatment of EPCRA Section 313 chemicals or chemical categories. The information reported in Section 7A focuses on the treatment of the entire waste stream, not the specific EPCRA Section 313 chemical or chemical category. The information includes type of waste stream (gaseous, aqueous or non-aqueous liquid, or solid); treatment methods or sequence; influent concentrations of the EPCRA Section 313 chemical or chemical category; treatment efficiency (combined removal and destruction) of the entire method or sequence; and whether efficiency data are based on actual operating data. Metals and metal portions of metal compounds treated in a combustion process are not destroyed but should still be reported as going through the treatment process, with a treatment efficiency of zero. Note that only the metal portion of metal compounds should be reported in the Form R. The following example illustrates how Section 7A should be completed for on-site treatment of a wastewater stream containing three EPCRA Section 313 chemicals or chemical categories.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Example - On-Site Waste Treatment

A process at the facility generates a wastewater stream containing an EPCRA Section 313 chemical (chemical A). A second process generates a wastewater stream containing two EPCRA Section 313 chemicals, a metal (chemical B) and a mineral acid (chemical C). Thresholds for all three chemicals have been exceeded and you are in the process of completing separate Form Rs for each chemical.

Both wastewater streams are combined and sent to an on-site wastewater treatment system before being released to a POTW. This system consists of an oil/water separator that removes 99% of chemical A; a neutralization tank in which the pH is adjusted to 7.5, thereby destroying 100% of the mineral acid (chemical C); and a settling tank where 95% of the metal (chemical B) is removed from the water (and eventually land filled off site).

Section 7A should be completed slightly differently when you file the Form R for each of the chemicals or chemical categories. The table accompanying this example shows how Section 7A should be completed for each chemical or chemical category. First, on each Form R you should identify the type of waste stream in Section 7A.1a as wastewater (aqueous waste, code W). Next, on each Form R you should list the code for each of the treatment steps that is applied to the entire waste stream, regardless of whether the operation affects the chemical or chemical category for which you are completing the Form R (for instance, the first four blocks of Section 7A.1b of all three Form Rs should show: P19 (liquid phase separation), C11 (neutralization), P11 (settling/clarification), and N/A (to signify the end of the treatment system). Note that Section 7A.1b is the only section of the Form R that is not chemical or chemical category specific. It applies to the entire waste stream being treated. Section 7A.1c of each Form R should show the concentration of the specific chemical or chemical category in the influent to the first step of the process (oil/water separation). For this example, assume chemicals or chemical categories A, B, and C are all present at concentrations greater than 1%. Therefore, code "1" should be entered. Section 7A.1d is also chemical specific. It applies to the efficiency of the entire system in destroying and/or removing the chemical or chemical category for which you are preparing the Form R. You should enter 99% when filing for chemical A, 95% for chemical B, and 100% for chemical C. Finally, you should report whether the influent concentration and efficiency estimates are based on operating data for each chemical or chemical category, as appropriate.

| | | | | Chemical A | | | |
|---|---|---|---|---|---|---|---|
| 7A.1a | 7A.1b | 1. P19 | 2. C11 | 7A.1c | 7A.1d | 7A.1e | |
| W | 3. P11 | 4. N/A | 5. ____ | 1 | 99 % | Yes | No |
| | 6. ____ | 7. ____ | 8. ____ | | | X | ____ |

| | | | | Chemical B | | | |
|---|---|---|---|---|---|---|---|
| 7A.1a | 7A.1b | 1. P19 | 2. C11 | 7A.1c | 7A.1d | 7A.1e | |
| W | 3. P11 | 4. N/A | 5. ____ | 1 | 95 % | Yes | No |
| | 6. ____ | 7. ____ | 8. ____ | | | X | ____ |

| | | | | Chemical C | | | |
|---|---|---|---|---|---|---|---|
| 7A.1a | 7A.1b | 1. P19 | 2. C11 | 7A.1c | 7A.1d | 7A.1e | |
| W | 3. P11 | 4. N/A | 5. ____ | 1 | 100 % | Yes | No |
| | 6. ____ | 7. ____ | 8. ____ | | | X | ____ |
| | | | | | [continued on next page] | | |

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

> Note that the quantity removed and/or destroyed is not reported in Section 7 and that the efficiency reported in Section 7A.1d refers to the amount of EPCRA Section 313 chemical or chemical category destroyed and/or removed from the applicable waste stream. The amount actually destroyed should be reported in Section 8.6 (quantity treated on site). For example, when completing the Form R for chemical B you should report "0" pounds in Section 8.6 because the metal has been removed from the wastewater stream, but not actually destroyed. The quantity of chemical B that is ultimately land filled off site should be reported in Section 6.2 and 8.1. However, when completing the Form R for chemical C you should report the entire quantity in Section 8.6 because raising the pH to 7.5 will completely destroy the mineral acid.

   i.    **On-Site Energy Recovery (Part II, Section 7B of Form R)** - Includes all on-site energy recovery of reported EPCRA Section 313 chemicals and chemical categories. U.S. EPA's view is that EPCRA Section 313 chemicals or chemical categories that do not contribute significant heat energy during combustion processes should not be considered for energy recovery. Therefore, only EPCRA Section 313 chemicals or chemical categories with a significant heating value that are combusted in an energy recovery unit, such as an industrial furnace, kiln, or boiler can be reported for energy recovery. If an EPCRA Section 313 chemical or chemical category is incinerated on site but does not significantly contribute energy to the process, (e.g., chlorofluorocarbons (CFCs)) it must be considered on-site waste treatment (see 4.1.3, h. above). Metals and metal portions of metal compounds will never be combusted for energy recovery. Note that only the metal portion of metal compounds should be reported in the Form R.

   j.    **On-Site Recycling (Part II, Section 7C of Form R)** - Includes all on-site recycling methods used on EPCRA Section 313 chemicals or chemical categories.

   k.    **Source Reduction and Recycling Activities (Part II, Section 8 of Form R)[1]** - Provide information about source reduction and recycling activities related to the EPCRA Section 313 chemical or chemical category for which release and other waste management activities are being reported. Section 8 uses some data collected to complete Part II, Sections 5 through 7. For this reason, Section 8 should be completed last. The relationship between Sections 5, 6, and 8.8 to Sections 8.1, 8.3, 8.5, and 8.7 are provided in equation forms below.

      (1)   **Quantity Released (Part II, Section 8.1 of Form R)** - The quantity reported in Section 8.1 is the quantity reported in all of Section 5 plus the quantity of metals and metal compounds reported as discharged off site to POTWs in Section 6.1 plus the

---

[1]The Subsection 8.1 through 8.8 designations are for the 1998 Form R. Please refer to the current reporting year *TRI Forms and Instructions* for any changes.

quantity reported as sent off site for disposal in Section 6.2 minus the quantity reported in Section 8.8 that was released on site or sent off site for disposal:

$8.1 = §5 + §6.1$ (metals and metal compounds) + §6.2 (disposal only) - §8.8 (on-site release or off-site disposal only)

(2)     **Quantity Used for Energy Recovery On-Site (Part II, Section 8.2 of Form R)** - Estimate the quantity of the EPCRA Section 313 chemical or chemical category in wastes combusted for energy recovery on site. This estimate should be the quantity of the chemical or chemical category combusted in the process for which codes were reported in Section 7B. Test data from trial burns or other monitoring data may be used to estimate the quantity of the EPCRA Section 313 chemical or chemical category combusted for energy recovery purposes. If monitoring data are not available, vendor specifications regarding combustion efficiency may be used as they relate to the EPCRA Section 313 chemical or chemical category. A quantity must be reported in Section 8.2 when a method of on-site energy recovery is reported in Section 7B and vice versa.

Two conditions need to be met to report the combustion of an EPCRA Section 313 chemical or chemical category in waste as energy recovery: the chemical or chemical category (1) must have a significant heating value and (2) must be combusted in an energy recovery unit, such as a waste heat boiler, an industrial furnace, or a kiln. If an EPCRA Section 313 chemical or chemical category that does not have a significant heating value (except metals and metal compounds) is combusted for energy recovery on site, it must be considered on-site waste treatment (see 4.1.3.h). Metals and metal compounds in a waste that are combusted on site will never be combusted for energy recovery and are considered to be disposed. Note that "NA" should be reported for EPCRA Section 313 chemicals or chemical categories that do not have a significant heating value. This includes metals, metal portions of metal compounds, halogens, hydrochlorofluorocarbons (HCFCs), and CFCs.

(3)     **Quantity Used for Energy Recovery Off-Site (Part II, Section 8.3 of Form R)** - The quantity reported in Section 8.3 is the quantity reported in Section 6.2 for which energy recovery codes are reported. If a quantity is reported in Section 8.8, subtract any associated off-site transfers for energy recovery:

$8.3 = §6.2$ (energy recovery) - §8.8 (off-site energy recovery)

Two conditions need to be met to report the combustion of an EPCRA Section 313 chemical or chemical category in waste as energy recovery: the chemical or chemical category (1) must have a significant heating value and (2) must be combusted in an energy recovery unit, such as a waste heat boiler, an industrial furnace, or a kiln. If an EPCRA Section 313 chemical or chemical category that does not have a significant heating value (except metals and metal compounds) is sent off site for energy recovery, it must be considered off-site waste treatment (see 4.1.3.g). However, this does not apply to metals and metal compounds. Metals and metal compounds sent off site for combustion in energy recovery units must be considered as sent off site for disposal because typically they will ultimately be disposed. Metals and metal portions of metal compounds will never be treated or combusted for energy recovery. Note that only the metal portion of metal compounds should be reported in the Form R. Also note that "NA" should be reported for EPCRA Section 313 chemicals or chemical categories that do not have a significant heating value. This includes metals, metal portions of metal compounds, halogens, HCFCs, and CFCs.

(4)  **Quantity Recycled On-Site (Part II, Section 8.4 of Form R)** - Estimate the quantity of the EPCRA Section 313 chemical or chemical category recycled in wastes on site. This estimate should be the quantity of the chemical or chemical category recycled in the process for which codes were reported in Section 7C. A quantity should be reported in Section 8.4 when a method of on-site recycling is reported in Section 7C and vice versa. To estimate this quantity, you should determine if operating data exist that indicate a recovery efficiency and use that efficiency value combined with throughput data to calculate an estimate. If operating data are unavailable, available vendor specifications may be appropriate.

(5)  **Quantity Recycled Off-Site (Part II, Section 8.5 of Form R)** - The quantity reported in Section 8.5 must be the same as the quantity reported in Section 6.2 for which recycling codes are reported. If a quantity is reported in Section 8.8, subtract any associated off-site transfers for recycling:

§8.5 = §6.2 (recycling) - §8.8 (off-site recycling)

(6)  **Quantity Treated On-Site (Part II, Section 8.6 of Form R)** - Waste treatment in Section 8 is limited to the destruction or chemical conversion of the EPCRA Section 313 chemical or chemical category in wastes. The quantities reported in Section 8.6 will be those that have undergone processes that are a subset of

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

the processes for which codes were reported in Section 7A, where treatment includes physical removal from a waste stream. To estimate the quantity treated, you should determine if operating data exist that indicate a treatment efficiency (e.g., destruction or chemical conversion of the EPCRA Section 313 chemical or chemical category) and use that efficiency value combined with throughput data to calculate an estimate. Because metals cannot be destroyed or chemically converted into something other than the metal or metal compound, metals cannot be reported as treated in Section 8.6. Note that conversion of a metal from one oxidation state to another (e.g., Cr(VI) to Cr(III)) is not considered treatment for Section 8.6. If operating data are unavailable, available vendor specifications may be appropriate. Section 7A must be completed if a quantity is entered in Section 8.6.

(7)    **Quantity Treated Off-Site (Part II, Section 8.7 of Form R)** - The quantity reported in Section 8.7 must be the same as the quantity reported in Section 6.2 for which treatment codes are reported plus quantities sent to a POTW as reported in Section 6.1 except for metals and metal compounds. If a quantity is reported in Section 8.8, subtract any associated off-site transfers for treatment:

$\S8.7 = \S6.1$ (except metals and metal compounds) + $\S6.2$ (treatment) - $\S8.8$ (off-site treatment)

Because metals cannot be destroyed or chemically converted into something other than the metal or metal compound, metals cannot be reported as treated in Section 8.7. Quantities of metals reported in Section 6.1 and 6.2 should be reported in Section 8.1 (Quantity Released) unless the facility has knowledge that the metal is being recovered.

(8)    **Quantity Released to the Environment as a Result of Remedial Actions, Catastrophic Events, or One-Time Events Not Associated with Production Processes (Part II, Section 8.8 of Form R)** - The purpose of this section is to separate quantities recycled off site, used for energy recovery off site, treated off site, or released (including disposed) that are associated with normal or routine production from those quantities that are not. The quantity reported in Section 8.8 is the quantity of the EPCRA Section 313 chemical or chemical category released directly into the environment or sent off site for recycling, energy recovery, treatment, or disposal during the reporting year because of any of the following events:

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- Remedial actions;
- Catastrophic events such as earthquakes, fires, or floods; or
- One-time events not associated with normal or routine production processes.

The quantity reported in Section 8.8 should not be included with quantities reported in Part II, Sections 8.1 through 8.7 of Form R, but should be included in Part II, Sections 5 and 6 of Form R as appropriate.

Spills that occur as a routine part of production operations and could be reduced or eliminated by improved handling, loading, or unloading procedures are included in the quantities reported in Section 8.1 through 8.7 as appropriate. This includes small drippings and spills that often occur during transfer operations and loading/unloading operations associated with wood preserving activities.

On-site releases and off-site transfers for further waste management from remediation of an EPCRA Section 313 chemical or chemical category or an unpreventable accident unrelated to production (such as a hurricane) are reportable in Section 8.8.

On-site treatment, energy recovery, or recycling of EPCRA Section 313 chemicals or chemical categories in wastes generated as a result of remedial actions, catastrophic events, or one-time events not associated with production processes are not reported in Part II, Section 8.8, nor in Sections 8.1 through 8.7 of Form R.

---

### COMMON ERROR - Double Counting

Release and other waste management activities should not be "double counted." A single wastewater discharge should not be listed as both a release to water (on site) and a discharge to POTW (off site). Similarly, a release to land should not be listed as both a release to land (on site) and a transfer to an off-site landfill. Estimates of release and other waste management activities should be prepared for Sections 5 through 7 of the Form R. For the most part, Section 8 relies on the data collected to complete these previous sections. Therefore, Section 8 should be completed last. However, the data elements of Section 8 (8.1 through 8.7) are mutually exclusive and care should be taken to avoid double counting.

---

**4.1.4**      **Step 4: Determine the Most Appropriate Method(s) and Calculate the Estimates for Release and Other Waste Management Activity Quantities**

After you have identified all of the potential sources for release and other waste management activity types, you must estimate the quantities of each EPCRA Section 313 chemical and chemical category released and otherwise managed as waste. U.S. EPA has identified four basic methods that may be used to develop estimates (each method has been assigned a code that must be included when reporting). The methods and corresponding codes are:

- Monitoring Data or Direct Measurement (M);
- Mass Balance (C);
- Emission Factors (E); and,
- Engineering Calculations (O).

Descriptions of these techniques are provided in the U.S. EPA publication, *Estimating Releases and Waste Treatment Efficiencies for the Toxic Chemical Release Inventory Forms* (1999 edition). They are also briefly described below. A more detailed discussion including examples of selected calculation techniques is presented in Appendix B. U.S. EPA does not require you to conduct additional sampling or testing for EPCRA Section 313 reporting; however, you are required to use the best, readily available information to determine the method that will result in the most accurate estimate. For example, it may not be appropriate to use emission factors or engineering calculations if more accurate data, such as stack testing results, are available. You are required to identify the primary method used for each estimation.

Many potential sources of data exist for these (and other) methods of developing estimates. Table 4-2 presents potential data sources and the estimation methodology in which they are most likely to be used. Based on site-specific knowledge and potential data sources available, you should be able to determine the best method for calculating each release and other waste management activity quantity.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Once all potential release and other waste management activity sources, types, and estimation methods have been determined, an estimate for each EPCRA Section 313 chemical and chemical category can be developed corresponding to the elements on Form R.

## Table 4-2

## Potential Data Sources for Release and Other Waste Management Calculations

| DATA SOURCES | |
|---|---|
| **Monitoring Data** | **Mass Balance** |
| • Air permits<br>• Continuous emission monitoring<br>• Effluent limitations<br>• Hazardous waste analysis<br>• Industrial hygiene monitoring data<br>• NPDES permits<br>• New Source Performance Standards<br>• Outfall monitoring data<br>• pH for acids and bases<br>• POTW pretreatment standards<br>• RCRA permit<br>• Stack monitoring data | • Air emissions inventory<br>• Hazardous material inventory<br>• Hazardous waste manifests<br>• MSDSs<br>• Pollution prevention reports<br>• Spill event records<br>• Supply and purchasing records |
| **Emission Factors** | **Engineering Calculations** |
| • AP-42 chemical specific emission factors<br>• Facility or trade association derived chemical-specific emission factors | • Facility non-chemical-specific emission factors.<br>• Henry's Law<br>• Raoult's Law<br>• SOCMI* or trade association non-chemical-specific emission factors<br>• Solubilities<br>• Volatilization rates |

*Synthetic Organic Chemicals Manufacturing Industry.

### 4.1.4.1    Monitoring Data or Direct Measurement (code M)

Using monitoring data or direct measurements is usually the best method for developing chemical release and other waste management activity quantity estimates. Your facility may be required to perform monitoring under provisions of the Clean Air Act (CAA), Clean Water Act (CWA), RCRA, or other regulations. If so, data should be available for developing estimates. Data may have also been collected for your facility through an

occupational health and safety assessment. If only a small amount of direct measurement data is available or if you believe the monitoring data are not representative, you must decide if another estimation method would give a more accurate result.

---

**COMMON ERROR - Treatment Efficiencies**

Vendor data on treatment efficiencies often represent ideal operating conditions. You should adjust such data to account for downtime and process upsets during the year that would result in lower efficiencies. Remember that efficiencies reported by vendors are often general and may not apply to specific chemicals. For example, an incinerator or flare may be 99.99% efficient in destroying certain organic chemicals, but will have a 0% efficiency in destroying metals.

---

#### 4.1.4.2       Mass Balance (code C)

A mass balance involves determining the amount of an EPCRA Section 313 chemical or chemical category entering and leaving an operation. The mass balance is written as follows:

---

Input + Generation = Output + Consumption

---

where:

- Input refers to the materials (chemicals) entering an operation. For example, chlorine added to process water as a disinfectant would be considered an input to the water treatment operation.

- Generation identifies those chemicals created during an operation (manufactured, including coincidental manufacturing). For example, when nitrogen sources are used in biological wastewater treatment systems, additional ammonia may be coincidentally manufactured.

- Output refers to the materials (chemicals) leaving an operation by various avenues. Output processes (avenues) may include on-site release and other on-site waste management activities; transfers off site for recycling, energy recovery, treatment, storage, or disposal; or the amount of chemical

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

that leaves with the final product. In wood preserving operations, for example, the EPCRA Section 313 metal compounds in the water-borne preservatives are designed to be absorbed by the wood and leave the operation as part of the finished product. They may also leave the facility as residue in shipping containers sent off site.

- <u>Consumption</u> refers to the amount of chemical converted to another substance during the operation (i.e., reacted).

The mass balance technique may be applied toward manufactured, processed, or otherwise used chemicals and chemical categories. It is typically most useful for otherwise used chemicals or chemical categories that do not become part of the final product, such as catalysts. For large inputs and outputs, a mass balance may not be the best estimation method, because slight uncertainties in mass calculations can yield significant errors in the release and other waste management estimates.

---

**<u>Example - Mass Balance</u>**

A facility otherwise uses a volatile EPCRA Section 313 chemical as a refrigerant and adds 20,000 pounds to the refrigeration system (to make up for system losses). The chemical is released to the air from relief vents, during system filling operations and from leaks in valves and fittings. During system maintenance, the lines are bled directly into water and the system is vented to the air. Monitoring data of the wastewater, including chemical concentrations and wastewater throughput, indicate that 1,200 pounds of the chemical were discharged to the wastewater. The remaining losses are assumed to be fugitive air releases and are estimated as follows:

Fugitive air releases of the EPCRA Section 313 chemical:

  = Amount input (lb/yr) - Amount released to wastewater (lb/yr)

  = 20,000 lb/yr - 1,200 lb/yr

  = 18,800 lb/yr

---

---

**COMMON ERROR - Mass Balances for Otherwise Used Chemicals**

Facilities often do not account for the entire quantity of EPCRA Section 313 chemicals or chemical categories that are otherwise used. EPCRA Section 313 chemicals and chemical categories in water treatment and equipment cleaning activities in wood preserving facilities are classified as otherwise used. Such chemicals and chemical categories rarely leave the facility with the product. In these instances, all throughput may be lost through on-site releases to air, water, or land, or it may be shipped off site for further waste management activities. Thus, the entire throughput is often reportable on Form R as release and other waste management activities to various media. Be sure to consider the entire throughput in these circumstances and partition it as appropriate. A mass balance may be the best starting point to estimate the release and other waste management quantities.

---

### 4.1.4.3    Emission Factors (code E)

An emission factor is a representative value that attempts to relate the quantity of a chemical or chemical category released with an associated activity. These factors are usually expressed as the weight of chemical or chemical category released divided by a unit weight, volume, distance, or duration of the activity releasing the chemical (e.g., pounds of chemical released per pounds of product produced). Emission factors, commonly used to estimate air emissions, have been developed for many different industries and activities. You should carefully evaluate the source of the emission factor and the conditions for its use to determine if it is applicable to the situation at your facility.

The most widely known and used source for emission factors is U.S. EPA's publication *Compilation of Air Pollutant Emission Factors (AP-42)*. Volume I of AP-42 contains information on over 200 stationary source categories, including process descriptions and potential sources of air emissions from these processes. Methodologies for estimating the quantity of air pollutant emissions from these sources are presented as Emission Factors. For EPCRA Section 313 purposes only CHEMICAL-SPECIFIC emission factors can be reported as Code "E" - Emission Factor in Part II, Section 5, Column B, Basis for estimate, of the Form R. AP-42 contains emission factors for individual chemicals and for the chemical group Volatile Organic Compounds (VOCs). The VOC emission factors are NOT chemical specific and when used must be reported in Column B as Code "O" - Engineering Calculations. Each chapter in Volume I covers a major industry or source category. Of special interest to wood preserving operations are Chapter 4: Evaporation Loss Sources, in particular Section 4.3, Wastewater

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Collection, Treatment, and Storage; Chapter 7: Liquid Storage Tanks; and Chapter 10: Wood Products Industry, in particular Section 10.8, Wood Preserving.

- **http://www.epa.gov/ttn/chief/ap42.html**

In an effort to provide current emissions data in an easy-to-access format, U.S. EPA has prepared a CD-ROM entitled Air CHIEF (Air ClearingHouse for Inventories and Emission Factors). The Air CHIEF CD-ROM is updated annually and is available from the Government Printing Office and can be ordered from their Web site. In addition to AP-42, the Air CHIEF CD-ROM contains the Factor Information Retrieval (FIRE) data system, a database management system containing U.S. EPA's recommended emission estimation factors for criteria and hazardous air pollutants. The CD-ROM also contains installable copies of software programs for air emission estimation models such as "TANKS" for VOC emission from storage tanks; "WATER8" for air emissions from wastewater systems; and "CHEMDAT8" for VOC emissions from Treatment, Storage, and Disposal Facility (TSDF) processes. Additional information on Air CHIEF and the CD-ROM is available at:

- **http://www.epa.gov/ttn/chief/airchief.html**

Your facility may have developed non-chemical-specific emission factors for fugitive or stack emissions from paint booths based on stack tests for various air permits. Be sure to consider these emission factors if appropriate. However, if such factors are used, they are considered "engineering judgment" for the purposes of EPCRA Section 313 reporting.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**Example - Emission Factors**

Emission factors have been developed for air releases of fuel constituents and combustion products from boiler operations. AP-42 lists a range of formaldehyde emission factors when No. 6 fuel oil is consumed:

0.024 to 0.061 lb formaldehyde generated/$10^3$ gal No. 6 fuel oil fired.

Assuming a facility met reporting requirements for formaldehyde, the facility operating a boiler using No. 6 fuel oil could use the above emission factor to determine the amount of formaldehyde generated and subsequently released to the air from the boiler stack. If 1,000,000 gallons of No. 6 fuel oil is used during a reporting year, the amount of formaldehyde generated would be between:

(0.024 lb/$10^3$ gal) × (1,000,000 gal) and (0.061 lb/$10^3$ gal) × (1,000,000 gal)

= 24 and 61 lb of formaldehyde

If there are not engineering controls or air pollution control devices that would destroy or remove the formaldehyde, the quantity should be reported in Part II, Sections 5.1 and 8.1 of the 1998 Form R.

NOTE: No. 6 fuel oil contains other EPCRA Section 313 chemicals and chemical categories and EPCRA Section 313 chemicals and chemical categories may also be coincidentally manufactured during combustion. All should be considered for EPCRA Section 313 reporting.

---

### 4.1.4.4        Engineering Calculations (code O)

Engineering calculations are assumptions and/or judgments used to estimate quantities of EPCRA Section 313 chemicals and chemical categories released or otherwise managed as waste. The quantities are estimated by using physical and chemical properties and relationships (e.g., Ideal Gas law, Raoult's law) or by modifying an emission factor to reflect the chemical properties of the chemical in question. Engineering calculations rely on the process parameters; you must have a thorough knowledge of your facility operations to complete these calculations.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

---

**Examples - Engineering Calculations**

Stack monitoring data are available for xylene but you are required to report for toluene. Toluene is used in the same application as xylene at your facility and the concentrations of the chemicals in the liquid feedstock are approximately the same. You can estimate the emissions of toluene by adjusting the monitoring data of xylene by a ratio of the vapor pressure for xylene to toluene. This example is an engineering calculation based on physical properties and process operation information:

From facility stack monitoring data, you determine that an estimated 200 lb of xylene are released as air emissions during the reporting year. Toluene is also present in the air emissions, but not monitored. The stack operates at approximately 20°C. Based on literature data, the vapor pressure at 20°C for toluene is 22 millimeters of mercury (mmHg) and for xylene is 6 mmHg. Using a ratio of the vapor pressures, the amount of toluene released as air emissions from the stack can be calculated:

$$\frac{X \text{ lb/yr toluene}}{200 \text{ lb/yr xylene}} = \frac{22 \text{ mmHg (vapor pressure of toluene)}}{6 \text{ mmHg (vapor pressure of xylene)}}$$

$$X \text{ lb/yr toluene} = \frac{(200 \text{ lb/yr xylene}) (22 \text{ mmHg toluene})}{(6 \text{ mmHg xylene})}$$

Completing the calculation, you determine that 730 lbs of toluene were released as stack air emissions during the reporting year.

---

Engineering calculations can also include computer models. Several computer models are available for estimating emissions from landfills, wastewater treatment, water treatment, and other processes.

Non-chemical-specific emission factors, Synthetic Organic Chemicals Manufacturing Industry (SOCMI) emission factors, industry-determined emission factors for processes or equipment, and site-specific emission factors also can be used, but must be classified as "Engineering Calculations" for EPCRA Section 313 reporting.

## 4.1.4.5    Estimating Release and Other Waste Management Quantities

Once all sources, types, and appropriate estimation methodologies have been identified, you can estimate the release and other waste management activity quantities for each element of the Form R. The recommended approach is that you estimate amounts from all sources at your facility to each type as identified by the elements of Form R. Table 4-3 presents a work sheet that may be helpful in compiling this information.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

       If you prepare a Form R, you must also enter on-site treatment information in Section 7A, including the code for each treatment method used, the destruction and removal efficiency for the EPCRA Section 313 chemical or chemical category in the treated waste stream, and the concentration of the EPCRA Section 313 chemical or chemical category in the influent to treatment. You should report treatment methods that do not actually destroy or remove the chemical or chemical category by entering "zero (0)" for removal efficiency. Similarly, on-site energy recovery methods and on-site recycling methods must be reported in Sections 7B and 7C, respectively.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Table 4-3

## Release and Other
## Waste Management Quantity Estimation Worksheet

Facility Name: _____    Date Worksheet Prepared: _____

EPCRA Section 313 Chemical or Chemical Category: _____    Prepared by: _____

CAS Registry Number: _____

Reporting Year: _____

| ON SITE | | | |
|---|---|---|---|
| Release or Other Waste Management Activity Type | Amount (lb) | Basis of Estimate | Form R Element* (1998 version) |
| FUGITIVE AIR | | | |
|    Equipment Leaks | | | 5.1 and 8.1 or 8.8 |
|    Process Areas | | | 5.1 and 8.1 or 8.8 |
|    Evaporative Losses, Spills, Surface Impoundments | | | 5.1 and 8.1 or 8.8 |
| Total = | | | 5.1 and 8.1 or 8.8 |
| STACK AIR | | | |
|    Process Vents | | | 5.2 and 8.1 or 8.8 |
|    Storage Tanks | | | 5.2 and 8.1 or 8.8 |
|    Control Device Stacks | | | 5.2 and 8.1 or 8.8 |
|    Other | | | 5.2 and 8.1 or 8.8 |
| Total = | | | 5.2 and 8.1 or 8.8 |
| RECEIVING STREAM/WATER BODY DISCHARGE | | | |
|    Stormwater Discharge | | | 5.3 and 8.1 or 8.8 |
|    On-Site Treatment Plant Discharge | | | 5.3 and 8.1 or 8.8 |
| Total = | | | 5.3 and 8.1 or 8.8 |
| ON-SITE UNDERGROUND INJECTION | | | |
|    Underground Injection to Class I Wells | | | 5.4 and 8.1 or 8.8 |
|    Underground Injection to Class II - V Wells | | | 5.4 and 8.1 or 8.8 |
| Total = | | | 5.4 and 8.1 or 8.8 |

*Entries for Section 8.8 only if release is result of remedial action, catastrophic event, or one-time event not associated with production process.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999
## Table 4-3 (Continued)

| **ON SITE** Release or Other Waste Management Activity Type | Amount (lb) | Basis of Estimate | Form R Element* (1998 version) |
|---|---|---|---|
| **ON-SITE LAND** | | | |
| RCRA Subtitle C Landfill | | | 5.5 and 8.1 or 8.8 |
| Other Landfill | | | 5.5 and 8.1 or 8.8 |
| Land Treatment/Application Farming | | | 5.5 and 8.1, 8.6, or 8.8 |
| Surface Impoundment | | | 5.5 and 8.1 or 8.8 |
| Other Disposal | | | 5.5 and 8.1 or 8.8 |
| Total = | | | 5.5 and 8.1 or 8.8 |
| **ON-SITE ENERGY RECOVERY** | | | |
| Industrial Kiln | | | 8.2 |
| Industrial Furnace | | | 8.2 |
| Industrial Boiler | | | 8.2 |
| Other Energy Recovery Methods | | | 8.2 |
| Total = | | | 8.2 |
| **ON-SITE RECYCLING** | | | |
| Solvents/Organics Recovery | | | 8.4 |
| Metals Recovery | | | 8.4 |
| Acid Regeneration | | | 8.4 |
| Other Reuse or Recovery | | | 8.4 |
| Total = | | | 8.4 |
| **ON-SITE TREATMENT** | | | |
| Air Emissions Treatment | | | 8.6 |
| Biological Treatment | | | 8.6 |
| Chemical Treatment | | | 8.6 |
| Incineration/Thermal Treatment | | | 8.6 |
| Physical Treatment | | | 8.6 |
| Solidification/Stabilization | | | 8.6 |
| Total = | | | 8.6 |

*Entries for Section 8.8 only if release is result of remedial action, catastrophic event, or one-time event not associated with production process.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999
## Table 4-3 (Continued)

| OFF SITE | | | | |
|---|---|---|---|---|
| **Release or Other Waste Management Activity Type** | **Amount (lb)** | **Basis of Estimate** | **Form R Element\* (1998 version)** | **Off-Site Location (name)** |
| OFF-SITE DISPOSAL | | | | |
| Solidification/Stabilization (metals and metal compounds only) | | | 6.2 and 8.1 or 8.8 | |
| Amount of metal and metal compounds to POTW | | | 6.1 and 8.1 or 8.8 | |
| Wastewater Treatment (excluding POTWs) metals and metal compounds only | | | 6.2 and 8.1 or 8.8 | |
| Underground Injection | | | 6.2 and 8.1 or 8.8 | |
| Landfill/Surface Impoundment | | | 6.2 and 8.1 or 8.8 | |
| Land Treatment | | | 6.2 and 8.1 or 8.8 | |
| Other Land Disposal | | | 6.2 and 8.1 or 8.8 | |
| Other Off-Site Management | | | 6.2 and 8.1 or 8.8 | |
| Total = | | | 6.2 and 8.1 or 8.8 | |
| OTHER AMOUNTS SENT OFF SITE | | | | |
| Amounts sent for storage | | | 6.2 and 8.1 or 8.8 | |
| Amounts sent for unknown waste management practice | | | 6.2 and 8.1 or 8.8 | |
| Total = | | | 6.2 and 8.1 or 8.8 | |
| OFF-SITE TREATMENT | | | | |
| Solidification/Stabilization | | | 6.2 and 8.7 or 8.8 | |
| Incineration/Thermal Treatment | | | 6.2 and 8.7 or 8.8 | |
| Incineration/Insignificant Fuel Value | | | 6.2 and 8.7 or 8.8 | |
| Wastewater Treatment (to POTW excluding metals and metal compounds) | | | 6.1 and 8.7 or 8.8 | |
| Wastewater Treatment (excluding POTW and metal and metal compounds) | | | 6.2 and 8.7 or 8.8 | |
| Sent to Waste Treatment Broker | | | 6.2 and 8.7 or 8.8 | |
| Total = | | | 6.2 and 8.7 or 8.8 | |

\*Entries for Section 8.8 only if release is result of remedial action, catastrophic event, or one-time event not associated with production process.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999
## Table 4-3 (Continued)

| OFF SITE | | | | |
|---|---|---|---|---|
| **Release or Other Waste Management Activity Type** | **Amount (lb)** | **Basis of Estimate** | **Form R Element\* (1998 version)** | **Off-Site Location (name)** |
| OFF-SITE ENERGY RECOVERY | | | | |
| Off-Site Energy Recovery | | | 6.2 and 8.3 or 8.8 | |
| Sent to Energy Recovery Broker | | | 6.2 and 8.3 or 8.8 | |
| Total = | | | 6.2 and 8.3 or 8.8 | |
| OFF-SITE RECYCLING | | | | |
| Solvents/Organics Recovery | | | 6.2 and 8.5 or 8.8 | |
| Metals Recovery | | | 6.2 and 8.5 or 8.8 | |
| Other Reuse or Recovery | | | 6.2 and 8.5 or 8.8 | |
| Acid Regeneration | | | 6.2 and 8.5 or 8.8 | |
| Sent to Recycling Waste Broker | | | 6.2 and 8.5 or 8.8 | |
| Total = | | | 6.2 and 8.5 or 8.8 | |

\*Entries for Section 8.8 only if release is result of remedial action, catastrophic event, or one-time event not associated with production process.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**4.2        Determination of Release and other Waste Management Quantities from
Wood Preserving Processes**

The purpose of wood preservation is to provide the wood with effective long-term
resistance to attacks by fungi, insects, and marine borers (1,2). Wood preserving processes fall
into two main categories:

- Conditioning of the wood; and
- Application of the preservative solution.

Conditioning reduces the water content of the wood prior to applying the
preservative solution (1). Wood is typically conditioned by a combination of heat and vacuum.
To apply the preservative solution, the wood charge is typically immersed in the solution and
pressure and, in some cases, heat is applied. The pressure or treatment cylinder where the
preservatives are applied is commonly called a retort. The preservative solution may be applied
in the same retort where the conditioning is performed, with the preservative solution introduced
to the retort immediately following the conditioning step. A common conditioning process for
the application of coal tar creosote preservative is the Boulton process. In the Boulton process
the wood is conditioned by being immersed and heated in creosote or in a mixture of creosote
and #6 fuel oil. As will be discussed in more detail later, No.6 fuel oil is one of the hydrocarbon
solvents used with oil-borne preservatives. Other conditioning processes use only heat and
vacuum to reduce the water content of the wood prior to application of the preservative solution.
Thus, conditioning per se does not use nor generate any EPCRA Section 313 chemicals or
chemical categories that are not used or generated in the application of the preservative solution.
For that reason, conditioning of the wood will not be discussed as a separate activity but be
considered as a part of the application of the wood preserving solution.

The two primary categories of wood preservatives used are oil-borne and water-
borne preservatives. The most widely used preservative in the United States is coal tar creosote,
an oil-borne preservative (6). The active ingredients in water-borne preservatives may be
inorganic metal oxides or, less frequently, salts. In 1988, water-borne preservatives were used
75% of the time and oil for the remaining 25 percent (1). **(NOTE to Reviewer: Are more**

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**recent data available. Also, this information seems to contradict the statement in Ref#6 that creosote is the most widely used wood preservative in the US. Please provide comment on this)** Sections 4.2.1 and 4.2.2 discuss each of the suggested steps for estimating release and other waste management activity quantities for application of the two wood preservative solutions. These sections follow the generic steps discussed in Section 4.1, and present specific examples for each of the preservative processes.

In 1995 the five EPCRA Section 313 chemicals and chemical categories most commonly reported by facilities in SIC Code 3111 were arsenic compounds, copper compounds, chromium compounds, creosote, and chromium (4). A list of the EPCRA Section 313 chemicals and chemical categories frequently reported in 1995 is found in Table 2-2. Typical wood preserving facilities purchase the preservative chemicals in rail car or tank truck quantities, thus there will be no drumming residues to consider in the release or other waste management quantity estimations. Exceptions to this would be the purchase of solid pentachlorophenol in plastic wrapped blocks and any facilities that mix their CCA solutions on site using the component materials. The residue on the discarded plastic wrapping materials, usually included in the RCRA Subtitle C landfill wastes, would have to be included and properly reported. For the disposal in a RCRA Subtitle C landfill the amount should be reported in Part II, Section 5.5.1A of the 1998 Form R. Disposal in an off-site landfill should be reported in Section 6.2 and included in Section 8.1.

If you receive chemicals in rail car or tank trucks you must still consider the residual quantities that are left after emptying and sent off site with the emptied car or truck. If you know the rail car or tank truck will be returned to the supplier and refilled without cleaning, the residue does not need to be reported. However, if the rail car or tank truck is cleaned and the residue is disposed or otherwise managed as waste, the quantity must be reported as an off-site transfer for disposal (or recycle, treatment, or energy recovery if appropriate). **[Note to reviewer: U.S. EPA's Chemical Engineering Branch estimates potential release from rail cars and tank trucks on a regular basis in the screening assessment of Premanufacture Notices for the New Chemical Program. CEB uses a control tendency (mean) of 0.07% by weight of car and a high end to loading estimate (worst case) of 0.2% by weight of car. Additionally,**

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**40 CFR Part 261.7 (b) (iii) (B) suggests 0.3% as an estimate of residual material for certain portable containers (such as rail cars and tank trucks) to be considered RCRA - empty. Please comment on the potential use of these estimates as guidance in this document.]**

Preservatives are applied using one of the three common pressure processes: the full-cell, modified full-cell, and empty-cell processes. Oil-borne preservatives are typically applied by the empty-cell and full-cell processes. The empty-cell process is the most widely used. Water-borne preservatives are typically applied by full-cell and modified full-cell processes (2).

The full-cell process attempts to fill the cells of the wood with the preservative chemicals. In the full-cell process a strong vacuum is applied to the wood in the retort. The preservative is then introduced into the retort without breaking the vacuum. When the retort is full, pressure is applied until the desired amount of preservative has entered the wood. The preservative is removed from the retort and a vacuum is applied to remove the excess preservative. The modified full-cell process uses a lower initial vacuum than the standard full-cell (2).

The empty-cell process attempts to coat the walls of the wood cells with the preservative while leaving a minimum of excess preservative in the void spaces of the wood cells (2). In the most widely used empty-cell process, called the Rueping process, air pressure is applied and maintained in the retort prior to filling it with preservative. After the retort is filled with preservative, additional pressure is applied to force the preservative into the wood. The pressure is released, the preservative drained from the retort, and a vacuum is applied to remove the surplus preservative from the wood. In another empty-cell process, called the Lowry process, the retort remains at atmospheric pressure when the preservative is added. The remainder of the Lowry process is the same as the Rueping process (1).

The processes in which oil-borne and water-borne preservatives are applied are similar; however, the chemicals used are different and the following discussion will present each process with separate examples for each type of preservative.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**4.2.1        Oil-Borne Preservatives**

**Step 1:  Prepare a Process Flow Diagram**

A site-specific process flow diagram should be prepared to help identify all potential sources and types of EPCRA Section 313 chemical or chemical category release and other waste management activities.  A typical process flow diagram for the application of oil-borne preservatives is presented in Figure 4-3.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999



**Figure 4-3. Application of Oil-Borne Wood Preserving Chemicals**

**Step 2: Identify EPCRA Section 313 Chemicals and Chemical Categories and Potential Sources of Chemical Release and Other Waste Management Activities**

EPCRA Section 313 chemicals and chemical categories typically found in oil-based wood preservatives include (1):

- Coal tar creosote;
- Copper naphthenate;
- Pentachlorophenol;
- Solubilized copper-8-quinolinolate; and
- Alkyl ammonium compound (AAC).

Coal tar creosote (CAS No.8001-58-9), a distillate of coal tar, is the most widely used wood preservative in the United States (6). About 300 chemicals have been identified in coal tar creosote, but as many as 10,000 other chemicals may be in the mixture (6). Creosote is

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

itself an EPCRA Section 313 chemical category. Other EPCRA Section 313 chemicals and chemical categories, and their typical concentrations, found in coal tar creosote include (1) :

- Phenanthrene, CAS No.85-01-8 - 21%;
- Dibenzofuran, CAS No.132-64-9 - 5%;
- Naphthalene, CAS No.91-20-3 - 3%*;
- Anthracene, CAS No.120-12-7 - 2%; and
- Biphenyl, CAS No.92-52-4 - 0.8%.

\* Industry information indicates the naphthalene content of coal tar creosote used in wood preserving operations is typically around 10% (8).

It is U.S. EPA policy that the EPCRA Section 313 chemical components of creosote should not be reported as separate chemicals when they are present at a wood preservation facility only as components of creosote. The EPCRA Section 313 reporting of creosote covers all the EPCRA Section 313 chemical components of creosote.

The other oil-borne preservatives are used in the following typical concentrations in wood preserving applications (1):

- Six to 8% copper naphthenate is dissolved in 92 to 94% hydrocarbon solvents;
- Pentachlorophenol contains about 95% chlorinated phenols and 5% hydrocarbon solvents;
- Solubilized copper-8-quinolinolate is a mixture of about 10% copper-8-quinolinolate and about 10% nickel-2-ethylhexoate in 80% hydrocarbon solvent; and
- Alkyl ammonium compound is a mixture composed of roughly 90% didecyldimethylammonium chloride and 10% dialkydimethylammonium chlorides.

The hydrocarbon solvent used in the above mixtures is typically either No.2 Fuel Oil/Diesel fuel or No.6 Fuel Oil. The only EPCRA Section 313 chemicals and chemical categories that may be present at or above *de minimis* in these solvents is 1,2,4-trimethylbenzene at 1% by weight in No.2 Fuel Oil/Diesel Fuel and PACs, such as benzo(a)anthracene at 1.13% by weight in No.6 Fuel Oil. Based on these concentrations, the quantity of No.2 Fuel Oil/Diesel Fuel (assuming a specific gravity of 0.83) required to meet the 25,000-pound processing

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

threshold for 1,2,4-trimethylbenzene is 357,143 gallons and the quantity of No.6 Fuel Oil
(assuming a specific gravity of 0.83) required to meet the processing threshold of PACs is
276,549 gallons (7).

Potential sources of EPCRA Section 313 chemicals and chemical categories are
air emissions from storage and working tanks, from the vacuum system, from opening of the
retort door, and from volatile components while the treated wood is on the drip pad, spills, and
emissions from valves, flanges, and pumps.

Facilities with on-site steam-generating operations should also consider the
coincidental manufacture of EPCRA Section 313 chemicals and chemical categories such as the
aerosol forms of hydrochloric and sulfuric acids, formaldehyde and metal compounds, from the
combustion of oil or coal.  (See **Example – Coincidental Manufacture** in Section 2.5.  Also,
U.S. EPA's *Guidance for Electricity Generating Facilities*, EPA 745-B-99-003, presents a very
detailed discussion of how to estimate threshold and release quantities from the combustion of
various fossil fuels, including approximate tons of fuel resulting in the exceedance of a threshold,
and emission factors to estimate the corresponding stack releases.)

The primary sources of air emissions in the application of oil-borne wood
preservatives are:  (a) the treated charge immediately after removal from the retort, (b) the
vacuum system (conditioning cycle and final vacuum), and (c) displaced air from working tank
blow backs (1).

Wastewater discharges may result from the steam conditioning process, from
washdown of process equipment and drip pads, from stormwater runoff, and from vacuum
system condensate.

Sources of solid wastes containing EPCRA Section 313 chemicals and chemical
categories may include materials washed off the incoming wood charge (such as saw dust, wood
chips, splinters, tags, labels, sand, dirt, and stones) if these materials have been contaminated
with EPCRA Section 313 chemicals and chemical categories.  These materials can form a

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

residue in the retort. Sludges from on-site wastewater treatment operations are another potential source of solid waste that should be considered. If it is collected and sent off site, the quantity of EPCRA Section 313 chemicals and chemical categories in the sludge should be reported as appropriate. Other solid wastes generated may include used protective clothing, plastic wrappings, and miscellaneous contaminated items. These are typically disposed at a RCRA Subtitle C landfill and an analysis of the constituents should be available and be used to estimate the amount of EPCRA Section 313 chemicals and chemical categories present in the solid waste.

**Step 3: Identify Release and Other Waste Management Activity Types**

Potential types of release and other waste management activities from the sources described above include fugitive and stack air emissions, direct and indirect wastewater discharges, and on-site and off-site management of solid wastes.

Air emissions from the retort door opening, from valves, flanges, and pumps and from the treated wood while on the drip pad are typically considered fugitive emissions because they are often released into the ambient air and not from a specific point or stack. These air emissions should be reported in Part II, Sections 5.1 and 8.1 of the 1998 Form R. Air releases from storage and working tanks are considered stack emissions and should be reported in Part II, Sections 5.2 and 8.1 of the 1998 Form R. Air emissions from the vacuum system may be fugitive emissions if emitted into general room air or ambient air and if the quantity cannot be traced to the specific source. These emissions should be considered stack emissions if channeled through an air pollution control device.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**Step 4: Determine the Most Appropriate Method(s) and Calculate the Estimates for Release and Other Waste Management Activity Quantities**

---

### Example - Air Emissions and Wastewater Discharges of Pentachlorophenol and 1,2,4-Trimethylbenzene

This example will illustrate the calculation of the estimated air emissions and wastewater discharges of pentachlorophenol (penta) and 1,2,4-trimethylbenzene from a wood preserving facility, SIC Code 2491. Air emissions and wastewater discharges are only two of the potential types of release and other waste management activities at a wood preserving facility. Other potential types include solid waste, spills and other catastrophic events, and remedial actions. The quantities of EPCRA Section 313 chemicals and chemical categories in each of these types of release and other waste management activities are best estimated based on analytical data and site specific information. For example, solid waste designated for RCRA Subtitle C landfills and wastes associated with remedial actions typically have extensive analytical data. Information on amount spilled and amount recovered is generally available for spill situations. This type of data can be used to estimate release and other waste management quantities for these activities. All must be considered for the complete reporting of penta release and other waste management quantities.

FACILITY DESCRIPTION

Your facility uses a solution of 5% penta and 95% diesel fuel to treat utility poles. The penta is purchased in tank truckloads as a solution, with a penta concentration range of 38% to 42%, according to the MSDS. During the reporting year, three truckloads totaling 8,500 cubic feet (cu ft) were delivered. The facility uses the Lowry-Boulton method to treat 150 charges, which amounts to approximately 300,000 cubic feet of wood per year in a single retort 8 feet in diameter and 120 feet in length. Each treatment cycle lasts about 40 hours.

THRESHOLD CALCULATION

At the beginning of the year your facility had 250,000 pounds of penta concentrate in the inventory. You purchased 600,000 pounds during the year and the year-end inventory showed 125,000 pounds. Under EPCRA Section 313 the penta is considered to be processed as it is incorporated into the product to be sold in commerce. Thus, the amount used is compared to the 25,000 pound per year processing threshold.

Amount of penta solution processed: (250,000 lb) + (600,000 lb) − (125,000 lb) = 725,000 lb

Use the 40% midpoint of the MSDS concentration range (see Section 3.2.1), to determine the amount of penta that is processed: (725,000 lb) × (0.40) = 290,000 lb penta.

Thus your facility has exceeded the processing threshold of 25,000 pounds and you must prepare an EPCRA Section 313 report for penta. Note that diesel fuel typically contains one percent 1,2,4-Trimethylbenzene, another EPCRA Section 313 chemical (7). Thus, if your facility used more than 357,143 gallons of diesel fuel during the year as the solvent for the penta this would result in exceeding the processing threshold for 1,2,4-Trimethylbenzene and an EPCRA Section 313 report would have to be prepared for that chemical also. In this case it is estimated the facility would process over 700,000 gallons per year of diesel fuel and thus require an EPCRA Section 313 report for 1,2,4-Trimethylbenzene

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

RELEASE AND OTHER WASTE MANAGEMENT ESTIMATIONS:

The penta solution is off loaded from the tank trucks into a single storage/work tank. This tank also receives the return solution from the wood treating retort and the recovered oil from the oil/water separator and evaporation tank water treatment system. The recovered oil will be reported in Part II, Section 8.4 of the 1998 Form R, as recycled on site.

WASTEWATER DISCHARGES

The wastewater consists of sap and moisture removed from the wood during the conditioning process combined with drippage, equipment washdown water and storm water. It is collected in several sumps and pumped to an oil/water separator. The water layer from the separator discharges to the POTW. The oil layer is pumped to an evaporator for evaporation of the residual water. The residual oil/preservative mixture is returned to the work tank. The wastewater flow for the reporting year was 300,000 gallons, the penta concentration was 5 mg/L, and although you expect some 1,2,4-trimethylbenzene to be present, none was detected (the detection limit was 10 ug/L).

The amount of penta discharged to the POTW was:

- = (300,000 gal/yr, total flow) × (5.0 mg/L, penta concentration) × (1.0E-06 Kg/mg) × (3.78 L/gal) × (2.2 lb/Kg)
- = 12.5 pounds penta

The amount of 1,2,4-Trimethylbenzene was:

- = (300,000 gal/yr, total flow) × (5.0 ug/L, 1,2,4-Trimethylbenzene concentration) × (1.0E-09 Kg/ug) × (3.78 L/gal) × (2.2 lb/Kg)
- = 0.012 pounds 1,2,4-trimethylbenzene

These quantities should be included in Part II, Sections 6.1 and 8.1 of the 1998 Form R.

U.S. EPA has provided guidance on the use of detection limits for EPCRA Section 313 reporting. This guidance states that you must use reasonable judgement as to the presence and amount of the EPCRA Section 313 chemical or chemical category based on the best readily available information. An indication that the chemical is below detection is not equivalent to stating that the chemical is not present. If you have reason to believe the chemical is present (as is the case in this example), a concentration equivalent to half the detection limit should be used. If you have no information to indicate the chemical exists you may assume the concentration is zero (see *EPCRA Section 313 Questions and Answers*, 1998 version, #472 and #497).

Air Emissions

Air emissions will occur from:
- The storage/work tank;
- Opening of the retort door;
- The vacuum system condenser;
- Volatilization from the wastewater treatment system;
- Volatilization from the treated wood on the drip pad; and
- Leaks in valves, flanges and pumps in the preservative application equipment.

Under EPCRA Section 313, air emissions from storage tanks are considered point source or stack emissions. The other sources should typically all be considered fugitive sources. The amount of penta in the air emissions is primarily a function of the concentration of the penta in the oil solution and the temperature of the solution.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

Emissions from Storage/Work Tank (stack or point)

U.S. EPA has developed a software program called "TANKS" to model the estimated emissions from storage tanks, see Section 4.1.4.3. Use of this model is the recommended procedure for estimating air emissions of VOCs from storage tanks. Manual calculations based on the following factors can also be used to estimate the air emissions from storage tanks (3):

- The total volume of air displaced and released by solution pumped to the tank during the year. This is the sum of the amount of new solution pumped in during the year and the amount of solution returned from the process, either direct from the retort or from the wastewater treatment operation (6.13E+05 cu ft/yr as calculated below).
- The tank temperature (50°C for this example)
- The concentration of penta in the solution (5% for this example)

The total volume of air released from the storage tank during the year is:

The displaced volume due to receipt of new solution is equal to the volume delivered during the year, three truckloads totaling 8,500 cu ft. The displaced volume due to the return of solution from the retort is equal to the volume of the retort occupied by the solution multiplied by the number of charges processed during the year:

$$(4{,}025 \text{ cu ft, solution volume of retort}) \times (150, \text{charges up}) = 6.04E{+}05 \text{ cu ft/yr}$$

Total displaced volume = 8,500 cu ft/yr + 6.04E+05 cu ft/yr = 6.13E+05 cu ft/yr

**[Note to Reviewer: Would appreciate suggestions for estimating the amount of solution returned from the wastewater treatment system.]**

AWPI has published temperature corrected emission factors for penta, creosote, and ammonia (3). For penta at 50°C it is 3.42E-06 lb penta/cu ft. Therefore, the annual estimated penta emissions from the storage/work tank is:

$$(6.13E{+}05 \text{ cu ft/yr, displaced volume}) \times (0.05, \text{5\% penta concentration}) \times (3.42E{-}06 \text{ lb penta/cu ft, emission factor})$$
= 0.1 lb/yr of penta

This should be included in Part II, Sections 5.2 and 8.1 of the 1998 Form R.

Emissions From Opening Retort Door (fugitive)

The emissions from the opening of retort doors is a function of:
- The number of charges during the year (150 for your facility);
- The average charge volume (2,000 cubic feet);
- The total retort volume (6,025 cubic feet);
- Retort temperature when door opened (90°C); and
- The concentration of penta in the solution (5%)

The amount of air displaced is:
$$[6{,}025 \text{ cu ft, retort volume} - 2{,}000 \text{ cu ft, charge volume}] \times (150, \text{charges/yr})$$
= 6.04E+05 cu ft/yr

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

The AWPI published temperature corrected emission factor for penta at 90°C is 7.42E-05 lb penta/cu ft. The annual estimated penta emissions from the opening of the retort door is:

$(6.04E+05$ cu ft/yr, air released$) \times (0.05,$ 5% penta concentration$) \times (7.42E-05$ lb/cu ft, emission factor$)$
= 2.2 lb/yr of penta

This should be combined with all other fugitive emissions and reported in Part II, Section 5.1 and included in Section 8.1 of the 1998 Form R.

Emissions From Vacuum System Condenser (point or fugitive)

The emissions from the vacuum system exhaust is a function of:
- The vacuum exhaust flow rate (200 cu ft/min for your facility);
- The average vacuum time per cycle (3 hours);
- The annual number of cycles (150 );
- The concentration of penta in the solution (5%); and
- The exhaust temperature (30°C).

The amount of air displaced is:

$(200$ cu ft/min, exhaust flow rate$) \times (60$ min/hr$) \times (3$ hrs, vacuum time$) \times (150,$ cycles/yr$)$
= 5.4E+06 cu ft/yr

The AWPI published temperature corrected emission factor for penta at 30°C is 5.38E-07 lb penta/cu ft. The annual estimated penta emissions from the vacuum system is:

$(5.4E+06$ cu ft/yr, air displaced$) \times (0.05,$ 5% penta concentration$) \times (5.38E-07$ lb penta/cu ft, emission factor$)$
= 0.1 lb/yr

For your facility this is a fugitive emission and should be combined with all other fugitive emissions and reported in Part II, Section 5.1 and included in Section 8.1 of the 1998 Form R.

Emissions From Wastewater Treatment System (fugitive)

Due to the low volatility and low concentration of penta, no air emissions are expected from the wastewater treatment system.

Emissions From Equipment Leaks (fugitive)

If equipment component emission factors for penta, a semi-volatile compound, cannot be found; AWPI recommends using the SOCMI factors, developed for volatile compounds, divided by 100 to account for the lesser volatility of penta compared to the SOCMI compounds. (3) To calculate an estimate of the penta emissions from equipment leaks you must determine the number of valves, flanges, pumps, and pressure relief valves. Multiply by the annual service hours and the adjusted SOCMI factor. For this example, assume the number of valves in the system is 25, the annual total service hours were 6,000 hours, and the adjusted SOCMI emission factor for a heavy liquid in an in-line valve is 5.1E-06 lb/hr (3).

The fugitive air release from the valves can be calculated as follows:

$(25,$ number of valves$) \times (6,000$ hrs/yr, service hours$) \times (5.1E-06$ lb/hr. emission factor$)$
= 0. 77 lb/yr

The annual emissions from the flanges, pumps, and pressure relief valves should be similarly estimated, combined with all other fugitive emissions, and reported in Part II, Section 5.1 and included in Section 8.1 of the 1998 Form R.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## 4.2.2      Water-Borne Preservatives

**Step 1:  Prepare a Process Flow Diagram**

A site-specific process flow diagram should be prepared to help identify all potential sources and types of EPCRA Section 313 chemical or chemical category release and other waste management activities.  A typical process flow diagram for the application of water-borne preservatives is presented in Figure 4-4.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999



**Figure 4-4.  Application of Water-Borne Wood Preserving Chemicals**


**Step 2:  Identify EPCRA Section 313 Chemicals and Chemical Categories and Potential Sources of Chemical Release and Other Waste Management Activities**

The water-borne preservatives used in this industry and the EPCRA Section 313 chemicals and chemical categories in each preservative are presented in Table 4-4 (2):

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

**Table 4-4**

# EPCRA Section 313 Chemicals Typically Found in Water-Born Preservatives

| Preservative | EPCRA Section 313 Chemicals and Chemical Categories |
|---|---|
| Oxine copper | Copper as CuO |
| Ammoniacal copper citrate (CC) | Copper as CuO, ammonia in water |
| Copper azole (CBA) | Copper as CuO |
| Copper dimethyldithiocarbomate (CDDC) | Copper as CuO |
| Chromated copper arsenate (CCA) | Copper as CuO, chromium as $CrO_3$, arsenic as $As_2O_5$ |
| Ammoniacal copper arsenate (ACA) | Copper as CuO, arsenic as $As_2O_5$, ammonia in water |
| Acid copper chromate (ACC) | Copper as CuO, chromium as $CrO_3$, |
| Ammoniacal copper zinc arsenate (ACZA) | Copper as CuO, zinc as ZnO, arsenic as $As_2O_5$, ammonia in water |
| Ammoniacal copper quat (ACQ-A) | Copper as CuO, ammonia in water |
| Chromated zinc chloride (CZC) | Chromium as $CrO_3$, zinc as ZnO |

According to information from AWPI, over 95% of the water-borne preservatives applied in the United States is CCA. There are three types of CCA (Type A, Type B, and Type C), each with a different range of concentrations of the three active components. The most commonly applied type is Type C (8). Most wood preservation facilities buy the mixed solution. However, some may buy the components and mix them on site. This requires the use of a strong acid, typically sulfuric acid, to lower the pH to 2. Note that sulfuric acid should only be considered for threshold and release and other waste management calculations if it is in the acid aerosol form.

According to Draft Section 10.8.2 of AP-42, air emissions from application of water-borne preservatives are generally not significant. The exception to this would be potential ammonia emission when CC, ACA, ACZA, or AZQ preservatives are used. Section 10.8 is currently in draft form and is under review and you should check the latest version on the AP-42 Internet site for guidance:

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

- **http://www.epa.gov/ttn/chief/ap42.html**

Facilities with on-site steam-generating operations should also consider the coincidental manufacture of EPCRA Section 313 chemicals and chemical categories such as the aerosol forms of hydrochloric and sulfuric acids, formaldehyde and metal compounds, from the combustion of oil or coal. (See **Example – Coincidental Manufacture** in Section 2.5. Also, U.S. EPA's *Guidance for Electricity Generating Facilities*, EPA 745-B-99-003, presents a very detailed discussion of how to estimate threshold and release quantities from the combustion of various fossil fuels, including approximate tons of fuel resulting in the exceedance of a threshold and emission factors to estimate the stack releases.)

Wastewater discharges may result from the steam conditioning process, from the washdown of process equipment, and from stormwater runoff. They can also be generated from the drip pad and wastewater from the vacuum discharge condensate.

Sources of solid wastes containing EPCRA Section 313 chemicals and chemical categories may include materials washed off the incoming wood charge (such as saw dust, wood chips, splinters, tags, labels, sand, dirt, and stones) if these materials have been contaminated with EPCRA Section 313 chemicals and chemical categories. These materials can form a residue in the retort. Sludges from on-site wastewater treatment operations are another potential source of solid waste that should be considered. If it is collected and sent off site, the quantity of EPCRA Section 313 chemicals and chemical categories in the sludge should be reported as appropriate. Other solid wastes generated may include used protective clothing and miscellaneous contaminated items. These are typically disposed at a RCRA Subtitle C landfill and an analysis of the constituents should be available and be used to estimate the amount of EPCRA Section 313 chemicals and chemical categories present in the solid waste.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## Step 3:  Identify Release and Other Waste Management Activity Types

Potential types of release and other waste management activities include direct and in-direct wastewater discharges and on-site or off-site management of solid wastes and shipping container residues.  Air emissions from application of water-borne preservatives is generally not significant (1).  The exception to this would be potential ammonia emission when CC, ACA, ACZA, or AZQ preservatives are used.

## Step 4:  Determine the Most Appropriate Method(s) and Calculate the Estimates for Release and Other Waste Management Activity Quantities

The estimating methods specified for EPCRA Section 313 calculations of release and other waste management quantity estimation are best illustrated in the following examples.

---

### Example – Metal Compounds (Threshold Determination, Wastewater, and Air Release Estimates from CCA Processing)

This example will illustrate the use of mass balance in threshold calculations for metal compounds and the use of monitoring data and emission factors for the release and other waste management calculations for the parent metal.

FACILITY DESCRIPTION

Your facility, a wood preserving facility in SIC Code 2491, has 23 full-time employees.  You had 25,000 pounds of a 50% water solution of Type C chromated copper arsenate (CCA) in your inventory on 1 January. During the year you purchased 500,000 pounds of the same solution and on 31 December  5,000 pounds remained. The solution was delivered by tank truck.  You did not use chromium, copper, or arsenic in any other processes at your facility.

The MSDS provided the following information on the concentration ranges of the components of the solution:

- Hexavalent chromium, as $CrO_3$:  44.5 to 50.5% ;
- Copper, as $CuO$:  17 to 21%; and
- Arsenic, as $As_2O_5$: 30 to 38%.

---

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

THRESHOLD CALCULATION:

The EPCRA Section 313 chemicals and chemicals categories in the solution are considered to be processed, as the preservative is designed to be incorporated into the final product to be sold on the commercial market. For threshold calculations the weight of the metal compound is used to determine if the processing threshold, 25,000 lb/yr, has been reached.

Total amount of CCA processed during the year:

    =    (25,000 lb, start inventory) + (500,000 lb, purchased) – (5,000 lb, final inventory) (0.5, 50% CCA)
    =    260,000 pounds

The MSDS presents the concentrations of the EPCRA Section 313 metal compounds as ranges. When the concentration of an EPCRA Section 313 chemical or chemical category is presented as a range and this entire range is above the *de minimis* concentration, you should use the mid-point of the range in your calculations (see Section 3.2.1).

- Total amount of hexavalent chromium, as $CrO_3$ = (260,000 lb CCA) × (0.475, midpoint of concentration range) = 123,500 pounds chromium compound.
- Total amount of copper, as $CuO$ = (260,000 lb CCA) × (0.19) = 49,400 pounds copper compound.
- Total amount of arsenic, as $As_2O_5$ = (260,000 lb CCA) × (0.34) = 88,400 pounds arsenic compound.

All three metal compounds exceed the 25,000-pound processing threshold and you must prepare a separate EPCRA Section 313 report for all three.

RELEASE AND OTHER WASTE MANAGEMENT QUANTITY ESTIMATES:

The following will illustrate how the release and other waste management quantities for the EPCRA Section 313 metals are calculated. According to AP-42, Section 10.8, "Wood Preserving", air emissions from the application of water-borne preservatives are generally not significant. Nevertheless, Section 10.8 of AP-42 does present emission factors for chromium and copper emissions from the vacuum cycle of the empty-cell chromated copper arsenate wood preserving process. Note that there are no shipping container residues to consider for this example since the EPCRA Section 313 chemicals and chemical categories arrive by tank truck.

Wastewater Discharges:

*(Note: Most, if not all, wood preserving facilities using water-borne preservative solutions, such as the CCA Type C in this example, directly reuse 100% of the CCA solution. The following calculation is included to assist any facility that may not conduct 100% direct reuse of the CCA solution)*

Your facility discharges its wastewater to the local POTW. You are required to record the total flow and monitor for chromium, copper, and arsenic to comply with the requirements of the pre-treatment permit. The total wastewater flow for the year was 525,000 gallons and the chromium concentration averaged 0.5 mg/L, the copper concentration averaged 2.0 mg/l, and the arsenic concentration, 0.05 mg/L.

The amount of chromium discharged to the POTW is:

    =    (525,000 gal/yr, total flow) × (0.5 mg/L, Cr concentration) × (1.0E-06 Kg/mg) × (3.78 L/gal) × (2.2 lb/Kg)
    =    2.2 pounds chromium

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

The amount of copper discharged to the POTW is:

   = (525,000 gal/yr, total flow) × (2.0 mg/L, Cu concentration) × (1.0E-06 Kg/mg) × (3.78 L/gal) × (2.2 lb/Kg)
   = 8.7 pounds copper

The amount of arsenic discharged to the POTW is:

   = (525,000 gal/yr, total flow) × (0.05 mg/L, As concentration) × (1.0E-06 Kg/mg) × (3.78 L/gal) × (2.2 lb/Kg)
   = 0.22 pounds arsenic

These quantities of chromium, copper, and arsenic should be reported in Part II, Section 6.1 of the 1998 Form R. They should also be included in Section 8.1 (Quantity Released), not 8.7 (Quantity Treated Off Site) because metals cannot be destroyed or considered to be treated. U.S. EPA allows 0.5 pounds and lesser amounts to be rounded to zero, so the quantity of arsenic reported can be zero (assuming no other releases). Keep in mind that exceeding the threshold determines whether or not you are required to file an EPCRA Section 313 report. If your facility processes 25,000 pounds or more of arsenic per year, you must file an EPCRA Section 313 report even if you can report a zero discharge amount (in these cases you may be eligible to file a Form A provided you meet other criteria for use of Form A, see Section 2.8).

Air Emissions:

Section 10.8, "Wood Preserving" of AP-42, specifically Table 10.8-2, presents emission factors for chromium and copper from the application of CCA. These factors are: 1.4E-09 pounds of chromium per cubic foot (lb/cu ft) of wood treated and 1.9E-09 pounds of copper/cu ft of wood. Your facility operates two retorts with an average wood charge of 2,450 cu ft. Your facility treats 550 charges per year, 275 per retort, for a total of 1.35E+06 cu ft of wood treated in a year. Based on the emission factors noted above, treatment of this quantity of wood would result in the release of 1.9E-03 (0.0019) pounds of chromium per year and 2.6E-03 (0.0026) pounds of copper per year (U.S. EPA allows 0.5 pounds and lesser amounts to be rounded to zero, so zero should be reported in the Form R; you may be eligible to file a Form A provided you meet other criteria for use of Form A, see Section 2.8).

Chromium Emissions:

$$= \left( \frac{1.4\ E-09\ lb\ Cr}{cu\ ft\ wood} \right) \times \left( \frac{2,450\ cu\ ft\ wood}{charge} \right) \times (550\ charges)$$

= 0.0019 pounds chromium

Copper emissions:

$$= \left( \frac{1.9\ E-09\ lb\ Cr}{cu\ ft\ wood} \right) \times \left( \frac{2,450\ cu\ ft\ wood}{charge} \right) \times (550\ charges)$$

= 0.0026 pounds copper

The remainder of the EPCRA Section 313 metals not accounted for in the above calculations, the vast majority of the EPCRA Section 313 metals, have been incorporated into the treated wood as part of the final product.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## 5.0    REFERENCES

1.    U.S. EPA, AP-42, Chapter 10.8, *Wood Preserving*, OAQPS, September 1999.

2.    U.S. EPA. *Wood Preserving Resource Conservation And Recovery Act (RCRA) Compliance Guide,* OECA, EPA–305-B-96-001, June 1996.

3.    American Wood Preservers Institute. *TRI Reporting (Form R) Guidance Manual for Wood Preserving Facilities*, 1995 Edition.

4.    U.S. EPA, TRI Database, 1995 reports.

5.    U.S. EPA. *Title III Section 313 Release Reporting Guidance, Estimating Chemical Releases From Wood Preserving Operations,* OPPTS, EPA 560/4-88-004p, February 1988.

6.    National Safety Council, *Creosote Chemical Backgrounder*, Environmental Health Center, Washington, DC. July 1997. http://www.nsc.org/ehc/ew/chems/creosote.htm)

7.    U.S. EPA. *EPCRA Section 313 Industry Guidance for Petroleum Terminals and Bulk Storage Facilities.* OPPTS, EPA-745-B-99-006, January 1999.

8.    Personal Communication, George E. Parris, Ph.D., Director of Environmental and Regulatory Affairs, American Wood Preservers Institute. March 9, 1999.

REVIEW DRAFT - DO NOT CITE OR QUOTE - November 12, 1999

## INDEX

The pages listed in bold text in the index correspond to the primary uses or definitions of the associated term. Additionally, this index includes a list of primary purposes for examples and common errors that are presented throughout the document.