UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CREOSOTE COUNCIL, *et al.*,       :
                                  :
         Plaintiffs,              :
                                  :
     v.                           :  Civil Action No. 08-0512 (JR)
                                  :
STEPHEN L. JOHNSON,               :
Administrator, U.S.               :
Environmental Protection Agency,  :
*et al.*,                         :
                                  :
         Defendants.              :

## MEMORANDUM

Plaintiffs complain that the EPA unlawfully changed its interpretation of regulations governing the Toxic Release Inventory reporting program under the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C. § 11001 et seq., in violation the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(c), and seek a preliminary injunction relieving them from compliance with the Agency's new interpretation.  For the reasons explained below, the motion for preliminary injunction [Dkt. 7] will be **granted.**

## Background

Under EPCRA, owners and operators of certain facilities are required to submit toxic chemical release reports ("TRI reports") for listed chemicals "manufactured, processed or otherwise used" above specified threshold levels.  42 U.S.C. § 11023(a).  The plaintiffs in this case are a wood processor and wood trade associations whose members use toxic chemicals (such

as creosote and benzoperylene) above threshold levels in manufacturing treated wood and are required to file TRI reports.

Treated wood is wood that has been impregnated with chemical preservatives, either through pressure or thermal treatment. Plaintiffs have submitted an affidavit describing the treatment process in detail, [Dkt. 7, Ex. 1], but it is not necessary to rehearse those facts here, because this case only concerns the finished product, wood that has been fully treated: nothing further will be done to it; it has been placed in the manufacturer's on-site storage yard, from which it will eventually be shipped to customers. Plaintiffs and their members have not previously reported emissions from such treated wood. Following inspections in 2005 and 2006, the EPA notified plaintiff Koppers, Inc., that its failure to include storage yard emissions in its TRI reports violated Section 313 of EPCRA. [Dkt. 7, Ex. 8]. In a letter dated October 15, 2007, the director of EPA's TRI Program, Michael Petruska, stated to the Treated Wood Coalition that stored wood was not exempt from Section 313 reporting under the so-called "articles exemption" set out at 40 C.F.R. § 372.38(b). [Dkt. 7, Ex. 9]. In this suit, plaintiffs assert that the EPA previously gave the "articles exemption" a definitive interpretation, and that the October 15, 2007, letter altered that interpretation. They argue that the new interpretation is unlawfully imposed because of

EPA's failure to submit it to APA notice and comment rulemaking. They seek a preliminary injunction relieving them from reporting storage yard emissions in their 2007 TRI reports.

## Analysis

A. Standards of Review

"To demonstrate entitlement to a preliminary injunction, a litigant must show '1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'"  Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting Cityfed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)).

In order for plaintiffs to demonstrate a substantial likelihood of success on their notice and comment claim, they must show that the EPA once gave the regulations in question a "definitive interpretation, and later significantly revised that interpretation."  Alaska Prof'l Hunters Ass'n v. Federal Aviation Admin., 177 F.3d 1030, 1034 (D.C. Cir. 1999); Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579, 586 (D.C. Cir. 1997) ("Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the

regulation itself: through the process of notice and comment rulemaking.").

B. Regulatory Context

40 C.F.R. § 372.38 exempts "articles" from certain EPCRA reporting requirements. "Article" is a defined term:

> Article means a manufactured item: (1) which is formed to a specific shape or design during manufacture; (2) which has end use functions dependent in whole or in part upon its shape or design during end use; and (3) which does not release a toxic chemical under normal conditions of processing or use of that item at the facility or establishment.

40 C.F.R. § 372.3(b). Plaintiffs contend that two documents gave a definitive interpretation to the articles exemption. The first was a 1988 letter from EPA official Charles Elkins to the Chemical Manufacturers Association concerning the applicability of the articles exemption to PVC film. The relevant portion of the letter states that:

> [EPA] notes the distinction between continuous low-level releases that occur over the life of the product from those releases that are the direct result of processing and use of the film. [EPA] recognizes that the first type of release is analogous to weathering or natural deterioration of an article and agrees that such releases should not be considered releases that negate the article exemption. [EPA] also agrees that the normal low-level migration of [a reportable toxic chemical] from the plastic film does not constitute a release reportable under Section 313.

[Dkt. 7, Ex. 4]. Under the Elkins letter, "continuous low-level releases" do not prevent classification as an article; in contrast, when "releases [] are the direct result of processing and use" of an item, that item cannot be defined as an article exempt from reporting. The second document is one of EPA's written instructions for the submission of TRI data, which was in use, without material change, from 1989 until 2001:

> You are not required to count as a release, quantities of an EPCRA section 313 chemical that are lost due to natural weathering or corrosion, normal/natural degradation of a product, or normal migration of an EPCRA section 313 chemical from a product. For example, amounts of an EPCRA section 313 chemical that migrate from plastic products in storage do not have to be counted in estimates of releases of that EPCRA section 313 chemical from the facility.

Toxic Chemical Release Inventory Form R and Instructions (2000) [Dkt. 7, Ex. 5]. In plaintiffs' submission, these documents together provide definitive support for the proposition that "releases of reportable chemicals from finished goods in the storage [] areas of manufacturing facilities are exempt from TRI reporting." [Dkt. 7 at 13].

C. Entitlement to Injunctive Relief

There can be no doubt that from 1989 until 2001, the Form R instructions took a definitive position on the issue at hand here: emission of regulated chemicals from products in storage did not have to be reported under EPCRA Section 313. The

authoritative nature of the instruction is made clear by its appearance in an official agency publication informing regulated entities of the scope of their reporting obligations.

The arguments that the EPA makes in resisting this conclusion are unconvincing. First, the EPA argues that "Nothing in the TRI reporting instructions . . . suggests that EPA had taken a position that stored plastic products, or any other stored products, could be considered 'articles' if their processing or use resulted in a release of toxic chemicals." [Dkt. 21 at 13.] This argument seems to turn on the fact that the Form R instructions did not include an explicit citation to the articles regulations. But the Form R instructions 1) followed the general position set out in the Elkins letter, which was explicitly interpreting the articles exemption, and 2) firmed up the line drawn in Elkins letter by example, explaining that releases from plastic products in storage are not reportable. The EPA has not explained what, if not the articles exemption, provided the basis for the Form R instruction that emissions from plastic products in storage need not be reported. Nor has the EPA cited any principle or rule distinguishing finished plastic products from finished wood products.

EPA's second argument offers a statement in its 1998 EPCRA Section 313 Questions and Answers as evidence that it never adopted the sort of "storage exemption" claimed by plaintiffs:

> Storage, in itself would not meet an activity
> threshold under EPCRA Section 313 . . . .
> However, if the facility exceeds the
> manufacturing, processing, or otherwise use
> threshold for the same toxic chemical elsewhere
> at the facility, the facility must consider
> releases from the storage of the toxic chemical.

The language above is given as an answer to a question that the EPA's memorandum does not quote, namely, "If a facility has a <u>chemical in storage</u> but does not process or otherwise use it during the reporting year, is the owner/operator subject to reporting?" [Dkt. 7, Ex. 6] (emphasis added). As the question makes clear, and as the EPA conceded at oral argument, the answer addresses storage of chemicals, and not storage of finished products that contain and emit toxic chemicals.

Finally, the EPA argues that "even if" the Form R instructions could be characterized as taking a definitive position on reporting and emissions from stored products, the relevant language "has not appeared in the reporting instructions for several years." [Dkt. 21 at 13-14]. That the statement concerning storage does not appear after 2001 is not dispositive, nor is it even helpful to the agency's position. Subsequent deletion does not change the fact that, while in effect, the instruction was definitive. If an agency could avoid notice and comment merely by deleting one definitive interpretation before adopting a second, inconsistent one, the requirement would be meaningless. <u>See</u> <u>Fina Oil & Chem. Co. v. Norton</u>, 332 F.3d 672,

- 7 -

676 (D.C. Cir. 2003)( "[A]gencies may not abandon 'prior, definitive' interpretations of their own regulations without first engaging in notice-and-comment rulemaking[.]") (quoting Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin., 296 F.3d 1120, 1125 (D.C. Cir. 2002)).

In sum, the Elkins letter and the 1989-2001 Form R instructions gave the articles exemption a definitive interpretation which was later abandoned when the Agency took the position in the Petruska letter that storage yard emissions must be reported under EPCRA Section 313.  Because the Petruska letter marked a significant change in the agency's understanding of the scope and applicability of the articles exemption, plaintiffs have made a strong showing that they are likely to prevail on their notice and comment challenge.

In light of this showing on the merits, plaintiffs' motion for a preliminary injunction will be granted.  Injunctive relief is warranted even though plaintiffs' claim of irreparable injury -- namely, that the treated wood industry would be required to spend up to $412,000 to develop a method to reasonably estimate emissions -- is not particularly substantial. See Cityfed Fin. Corp., 58 F.3d at 747 ("If the arguments for one factor are particularly strong, an injunction may issue even if the argument in other areas are rather weak.").  Finally, the injunction serves the general public interest in open and

accountable agency decision-making, and there has been no showing that its issuance will cause substantial harm to other parties.

An appropriate order accompanies this memorandum.


                                        JAMES ROBERTSON
                                  United States District Judge